## THE GLORIA.

## THE FREEDOM.

### (District Court, S. D. New York. July 17, 1919.)

### Nos. 68–379, 68–291.

1. **Admiralty ⬅➡43—Immunity from arrest because of government ownership not ground for dismissal of cross-libel.**

   That a vessel against which a cross-libel in rem for collision is filed is owned and being used by the United States for purposes connected with the war, and is therefore immune from arrest. *held* ground for refusing to issue process against her, but not ground for dismissing the cross-libel, which may be prosecuted at any time possession by the United States ceases.

2. **Admiralty ⬅➡58—Cross-libelant entitled to security.**

   Assuming that the claimant of a vessel libeled for collision is within the meaning of "respondent," as used in admiralty rule 53 (29 Sup. Ct. xiv), such a claimant, which filed a cross-libel in rem, but could not arrest the other vessel because owned by the United States, *held* entitled to a stay of the suit until security is given under such rule.

In Admiralty. Suit for collision by the United States against the steamship Gloria, the Aktiebolaget Urania, claimant, with cross-libel against the steamship Freedom. On motion by libelant to declare the Freedom immune from arrest and to dismiss cross-libel, and by cross-libelant for stay until the giving of security. Libelant's motion sustained in part, and stay granted.

These are two motions; the first by the United States to declare the steamship Freedom immune from arrest under the cross-libel, and to dismiss the same; the second by the claimant in the first libel (cross-libelant in the second) for a stay of all proceedings under the principal libel until the United States shall give security under Supreme Court admiralty rule 53 (29 Sup. Ct. xiv). The facts, which appear by stipulation and by the pleadings, are as follows:

Under the joint resolution of Congress, signed by the President on March 12, 1917, and the executive order of the President on June 30, 1917, the German steamer Wittekind was seized by the United States, and her title thereupon became vested in that corporation sovereign. Her name was changed to the Iroquois, and she was "documented" in the name of the United States, through the United States Shipping Board. Later her name was changed to the Freedom, under which she sails at present. On May 5, 1919, and from

---

then on, she was a part of the United States navy navigated and manned by officers and a crew of the navy and used solely in the transportation of troops of the United States army from ports in France to ports in the United States.

The steamer Gloria, owned by the cross-libelant, came into collision with the Freedom on May 5, 1919, in a fog off the coast of the United States. On May 8, 1919, the United States libeled the Gloria in this court in rem for this collision, and arrested her under process of this court on July 9, 1919. On May 21, 1919, the cross-libelant which had appeared as claimant of the Gloria in the first libel filed a second libel in rem, called the cross-libel, in the District Court, praying process and arrest of the Freedom, which was not and is not yet, within the jurisdiction of this court, and of which, therefore no arrest has been attempted.

Herbert K. Stockton, of New York City, for the Aktiebolaget Urania.

John Hunter, Jr., of New York City, and DeLancey Nicoll, Jr., of Merrick, N. Y., for the United States.

LEARNED HAND, District Judge (after stating the facts as above).
[1] The cross-libel, though in rem, is directed against a vessel which for the present is immune from any possible process of this court, not alone because it is outside the jurisdiction, but because it is a ship owned by and in the possession of the United States. The Siren, 7 Wall. 152, 19 L. Ed. 129. It is true that a valid lien has arisen against her if the allegations of the cross-libel be true, and that that lien would survive the transfer of possession by the United States; but for the present the libel hangs in the air. The libelant's motion to declare the ship immune must therefore be granted, if limited to the period of possession by the United States.

The motion to dismiss the cross-libel will be denied. I know of no reason why the cross-libel should be dismissed because the prayer for process cannot at the present time be granted. As I have said, an arrest would be within the power of this court, should the United States lose possession of the Freedom. This court always has jurisdiction over the subject-matter, and may proceed as soon as the·arrest becomes legal.

[2] There remains the cross-libelant's motion for a stay under the 53d rule. The use of the word "respondent" suggests that the cross-libel was to be in personam; but it is not a conclusive consideration, for the terminology of the rules is not scrupulously accurate. Thus the word "defendant" is used throughout the earlier rules for "respondent," and the word "respondent" itself occurs only in rule 53. That it might have been used to include "claimant" as well seems to me quite possible. Now it will generally be the case that the respondent or claimant in the principal case can be protected, if he have an option to sue the libelant in personam and get security for his claim. It may even be assumed that, if he sues in rem, he expects to arrest the ship, which will of itself give him security. Yet there are cases, of which this is one, and The Newbattle, L. R. 10 P. D. 33, was another, in which the respondent or claimant in the principal cause has at best a very doubtful claim against the libelant in personam, but a perfectly good claim against the ship, if he could only arrest her. This is generally the case when the ship of a sovereign has committed a tort.

The purpose of the rule, which is only to subject the original libelant to just conditions in the prosecution of his libel, cannot possibly be realized unless in such cases he be compelled to consent to give the same security which he would have had to give, had the cross-libelant been able to arrest the ship. This, of course, does not trench upon the libelant's immunity from process, if he have any, because the rule does not attempt to acquire jurisdiction over him at all, though that is the uniform practice in equity. Street's Federal Equity Practice, § 1066. It operates only through the sanction of a stay of his main suit, leaving him free to abandon, though he has begun, his own libel without remaining liable under the cross-libel.

Upon authority it must be owned that, two years after the rule was passed, Mr. Justice Blatchford, then District Judge, squarely decided that the rule did not apply to cross-libels in rem. The Bristol, 4 Ben. 55, Fed. Cas. No. 1,889. But Judge Longyear, in The Toledo, 23 Fed. Cas. 1355, No. 14,077, reached an opposite conclusion with Judge Blatchford's ruling before him, and the subsequent tendency has been in general to treat the rule with some liberality. Empresa, etc., Co. v. North, etc., Co. (D. C.) 16 Fed. 502, 504. Judge Hough, in The F. J. Luckenbach, on October 7, 1918, held, though without opinion, that a suit should be stayed until security was given upon the cross-libel in rem, and Benedict, in his Admiralty Practice, § 394, lays it down unconditionally. It seems to me that the law is not yet definitely settled against the broader interpretation, and that every consideration of justice makes for the allowance of the motion.

The suits, it is true, have not yet been formally consolidated; but this motion may be taken to indicate that they are to be treated hereafter as libel and cross-libel.

The motion for a stay is granted.