WASHINGTON-SOUTHERN NAVIGATION COMPANY *v.* BALTIMORE & PHILADELPHIA STEAMBOAT COMPANY.

ON CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 108.   Argued November 27, 28, 1923.—Decided January 28, 1924.

1. The function of rules of court is to regulate the practice of the court and facilitate the transaction of its business.   P. 635.

2. A rule of court cannot enlarge or restrict jurisdiction, or abrogate or modify the substantive law. P. 635.
3. And this limitation applies to the rules prescribed by this Court for inferior tribunals in admiralty cases. *Id.*
4. Admiralty Rule 50 was intended to formulate practice already settled, and is not to be construed as empowering the District Court to stay proceedings on an original libel until the libelant shall give security to respond to a counterclaim, in a case where the original libel is *in personam* and where the cross-libelant has given security voluntarily. Pp. 632, 638.

Questions certified by the Circuit Court of Appeals.

*Mr. Arthur E. Weil* for Washington-Southern Navigation Company.

*Mr. Thomas Raeburn White,* with whom *Mr. John Cadwalader, Jr.,* was on the brief, for Baltimore & Philadelphia Steamboat Company.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Washington-Southern Navigation Company, the charterer of two steamers of the Baltimore & Philadelphia Steamboat Company, filed, in the Eastern District of Pennsylvania, a libel *in personam* against the owner to recover the sum of $120,000 for breach of the charter party. The usual bond for costs was given. No attachment or seizure of the property of the respondent was made or sought. The owner traversed the essential averments of the libel, and also filed a cross-libel in which it sought damages in the sum of $43,443.25. There was no attachment or seizure of person or property under the cross-libel. The essential allegations of the cross-libel were in turn denied by the charterer. Thereafter, the owner moved that the charterer be required to give security to respond in damages on the counterclaim. The

trial court ordered it to do so, provided the owner first gave security to pay the charterer's claim. 271 Fed. 540. This the owner did of his own motion and without compulsion. The charterer did not give the security ordered. Thereupon, the trial court entered a decree staying all proceedings until its order should be obeyed.

The motion and order were based on Rule 50 of the new Admiralty Rules, promulgated December 6, 1920, 254 U. S. 24 (appendix), which amends former Rule 53, 210 U. S. 562, by adding thereto the words italicised, so that it now reads:

Rule 50. " Whenever a cross-libel is filed upon any counterclaim arising out of the same *contract or* cause of action for which the original libel was filed, *and the respondent or claimant in the original suit shall have given security to respond in damages,* the respondent in the cross-libel shall give security in the usual amount and form to respond in damages *to the claims set forth* in said cross-libel, unless the court, for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given *unless the court otherwise directs.*"

The charterer appealed to the Circuit Court of Appeals. That court, under § 239 of the Judicial Code, asks instruction whether this rule empowers the District Court to stay proceedings in the original suit until the original libelant shall have given security to respond to the counterclaim, in a case where the original libel was *in personam* and the original respondent (the cross-libelant) has given the security voluntarily; that is, of his own motion and without compulsion.

The owner insists that the terms of Rule 50 are so clear that there is no room for a construction different from that given to it by the District Court. But to ascertain the true meaning of the rule, the operation and effect of the construction urged must be considered. Under that given,

a libelant may be automatically barred from prosecuting his suit, merely because he is unable or unwilling to give security to satisfy the claim made in the cross-libel. For, although no security is asked of the original respondent, he may, by voluntarily giving security, effect a stay of all proceedings against himself, " unless the court, for cause shown ", directs otherwise.[1] Thus construed, Rule 50 would abrogate the right to proceed in admiralty, and substitute therefor either a conditional right to prosecute the suit, provided libelant gives security to satisfy the counterclaim, or a permission to do so, provided the court, in its discretion, for cause shown, grants leave. Moreover, the circumstances under which alone this loss of the right to sue would occur are whimsical. The original libelant could proceed without giving the security, if the respondent, instead of filing a cross-libel, brought an independent cross-suit. Likewise, if the person who feels himself aggrieved, instead of exercising diligence in prosecuting his claim, exercises self-restraint, and allows the other party to the controversy to commence the hostilities, he may, without giving the security, exercise the right to prosecute his cause of action, either by a cross-libel or by an independent cross-action.[2] An intention to introduce a practice so capricious is not to be lightly imputed.

To ascertain the true meaning of the rule, it must be read, also, in the light of the established admiralty jurisdiction, of the general principles of maritime law, and of the appropriate function of rules of court. Before Rule

---

[1] Compare *Compagnie Universelle, etc.* v. *Belloni,* 45 Fed. 587; *Old Dominion S. S. Co.* v. *Kufahl,* 100 Fed. 331, 332. It has been said that the burden is upon the original libelant to show why he should be relieved from giving the security. *Empresa Maritima a Vapor* v. *North & South American Steam Nav. Co.,* 16 Fed. 502, 504; *The Transit,* 210 Fed. 575.

[2] Compare *Prince Line* v. *Mayer & Lage,* 264 Fed. 856.

53 was adopted [3], the general practice in admiralty concerning the giving of security had long been settled. Every party—libelant, respondent, claimant, and intervenor—was obliged, or could be required, to give security for costs. No party could be required to give security to satisfy the claim of another. In suits *in personam*, where the mesne process was solely by simple monition in the nature of a summons to appear and answer the suit, no security, except that for costs, was ever given by the respondent. Where the process included a clause for mesne attachment of property, the respondent was not obliged to give any security except for costs; but he could, if he chose, obtain dissolution of the attachment by giving security to pay the amount of the decree against him not exceeding the value of the attached property. Where the mesne process was by warrant of arrest of the person in the nature of a capias, the respondent was, likewise, not obliged to give security for the claim; but he could, if he chose, obtain his release by giving bail to secure his appearance and/or to satisfy the decree. Where the suit was *in rem*, the claimant was under no obligation to give such security; but he could, if he chose, obtain release of the property seized by giving security for its value or for the amount required to satisfy the claims made. Thus, neither respondent, claimant nor intervenor could, as a

[3] Rule 53 was promulgated at the December Term, 1868 (originally Rule 54, 7 Wall. p. v.). This Court first promulgated rules of practice in admiralty in 1844. 3 How. pp. iii to xiv. This was done pursuant to the Act of August 23, 1842, c. 188, §6, 5 Stat. 516, 518. For the earlier legislation see Act of September 24, 1789, c. 20, § 17, 1 Stat. 73, 83; Act of September 29, 1789, c. 21, § 2, 1 Stat. 93, 94; Act of May 8, 1792, c. 36, § 2, 1 Stat. 275, 276; Act of May 19, 1828, c. 68 § 1, 4 Stat. 278. See also *The Steamer St. Lawrence,* 1 Black, 522; *Ward* v. *Chamberlain,* 2 Black, 430. For supplemental rules and amendments of rules made prior to December 6, 1920, see 210 U. S 544-566.

condition of prosecuting his claim or defence, be compelled to furnish any security other than for costs. And the libelant could never be put into a situation which obliged him to give any other security. Such was still the practice concerning the giving of security for claims prosecuted in admiralty (except as modified by Rule 53) when Rule 50 was incorporated in the revision of December 6, 1920.[4]

The construction given to Rule 50 by the District Court would, by imposing an impossible or onerous condition, deprive many litigants of the right to prosecute their claims in admiralty. Among others, it would, if applied generally, deny this right to seamen, upon whom, regardless of their means or nationality, Congress, shortly before the adoption of Rule 50, had conferred the right to prosecute their claims, in both trial and appellate courts, without giving security even for costs.[5] It would likewise deny to poor citizens of the United States the right to proceed in admiralty, which Congress had by successive acts sought to ensure, in order to relieve litigants from dependence upon the judicial discretion theretofore incident to leave

---

[4] See Rules of 1844, Nos. 25, 26, 34, 3, 4, 10, 11; Conkling, Admiralty (1848), part 2, c. 4; Benedict, Admiralty (1850), c. 27. Act of March 3, 1847, c. 55, 9 Stat. 181; Act of March 2, 1867, c. 180, 14 Stat. 543; *Manro* v. *Almeida*, 10 Wheat. 473; *Atkins* v. *Disintegrating Co.*, 18 Wall. 272; *Bouysson* v. *Miller*, Bee's Adm. 186; *Lane* v. *Townsend*, 1 Ware, 286; *Smith* v. *Miln*, Abbott, Adm. 373; *Louisiana Insurance Co.* v. *Nickerson*, 2 Low. 310; *Stone* v. *Murphy*, 86 Fed. 158; *Lyons Co.* v. *Deutsche Dampschiffahrts-Geselschaft Kosmos*, 243 Fed. 202.

[5] Acts of July 1, 1916, c. 209, § 1, 39 Stat. 262, 316; June 12, 1917, c. 27, 40 Stat. 105, 157; *Ex parte Abdu*, 247 U. S. 27; Act of July 1, 1918, c. 113, § 1, 40 Stat. 634, 683. See *The Memphian*, 245 Fed. 484.

Before the enactment of these statutes, it had been held in regard to all suits in admiralty between foreigners, that the court might, in its discretion, decline to take jurisdiction. *The Belgenland*, 114 U. S. 355, 361–364.

to sue *in forma pauperis*.[6]   The right of a citizen of the United States to sue in a court having jurisdiction of the parties and of the cause of action includes the right to prosecute his claim to judgment.   *Illinois Central R. R. Co. v. Adams,* 180 U. S. 28, 34; *McClellan* v. *Carland,* 217 U. S. 268, 281.   Obviously, it was not the intention of this Court, in adopting the rule, to disregard the right of seamen, of poor persons or of others to prosecute suits in admiralty. The function of rules is to regulate the practice of the court and to facilitate the transaction of its business.   This function embraces, among other things, the regulation of the forms, operation and effect of process; and the prescribing of forms, modes and times for proceedings.   Most rules are merely a formulation of the previous practice of the courts.   Occasionally, a rule is employed to express, in convenient form, as applicable to certain classes of cases, a principle of substantive law which has been established by statute or decisions.   But no rule of court can enlarge or restrict jurisdiction.   Nor can a rule abrogate or modify the substantive law.   This is true, whether the court to which the rules apply be one of law, of equity or of admiralty.   It is true of rules of practice prescribed by this Court for inferior tribunals, as it is of those rules which

---

[6] Act of July 20, 1892, c. 209, § 1, 27 Stat. 252; *Bradford* v. *Southern Ry. Co.,* 195 U. S. 243; Act of June 25, 1910, c. 435, 36 Stat. 866; *Kinney* v. *Plymouth Rock Squab Co.,* 236 U. S. 43.   And see Act of June 27, 1922, c. 246, 42 Stat. 666.   For the general requirement in admiralty concerning stipulations for costs, see *Rawson* v. *Lyon,* 15 Fed. 831.   For the limitations there upon permission to sue *in forma pauperis* prior to the legislation, see *Polydore* v. *Prince,* 1 Ware, 410; *The Ship Great Britain,* Olcott, 1; *Wheatley* v. *Hotchkiss,* 1 Sprague, 225, 227; *The Schooner Caroline and Cornelia,* 2 Ben. 105; *Cole* v. *Tollison,* 40 Fed. 303.   For limitations remaining after the Act of 1892, see *Donovan* v. *Salem & P. Nav. Co.,* 134 Fed. 316; *The Pere Marquette* 18, 203 Fed. 127, 133.

lower courts make for their own guidance under authority conferred.[7]

It remains to consider the purpose of Rule 50. The cross-libel, unlike the cross-bill in equity, is of recent origin. This simple device in aid of the administration of justice was not established in the English courts of admiralty until, under the name of cross-cause, it was authorized by the Admiralty Court Act of 1861, 24 and 25 Vict., c. 10, § 34. Theretofore, that court considered itself without power even to compel consolidation of independent cross-suits or to stay one to await proceedings in the other. Moreover, where the original libel was filed by a non-resident libelant, substituted service in a cross-action, by serving his proctor, was not permitted, until this was authorized by a rule of court adopted in 1859.[8] In American courts of admiralty the practice was more liberal. Set-off being of statutory origin and not expressly authorized in admiralty, was rejected here as in England.[9] But Congress conferred upon all federal courts, in 1813, the right to compel consolidation of causes. *The*

[7] *Ward* v. *Chamberlain*, 2 Black, 430, 435–437; *Hudson* v. *Parker*, 156 U. S. 277, 284; *Venner* v. *Great Northern Ry. Co.*, 209 U. S. 24, 33-34; *Davidson Marble Co.* v. *Gibson*, 213 U. S. 10, 18. See also *Mills* v. *Bank of the United States*, 11 Wheat. 431, 439–440; *Patterson* v. *Winn*, 5 Pet. 233, 243; *The Steamer St. Lawrence*, 1 Black, 522, 530; *Life Insurance Co.* v. *Francisco*, 17 Wall. 672, 679; *The Lottawanna*, 21 Wall. 558, 579; *The Corsair*, 145 U. S. 335, 342; *Saylor* v. *Taylor*, 77 Fed. 476, 480.

[8] See *The Rougemont*, (1893) P. 275, 276–279; Williams & Bruce, Admiralty Jurisdiction and Practice (3rd ed.), 108, 370-371. Compare Coote, Admiralty Practice (1860), 28, 133. But the court did, in some cases, stay payment on the execution. Compare *The Seringapatam*, 3 W. Rob. 38, 44; *The North American*, Lush. 79.

[9] The rule of law stated by Mr. Justice Story in *Willard* v. *Dorr*, 3 Mason, 161, that recoupment is permissible, but that set-off is not, has been strictly adhered to since. See *The Two Brothers*, 4 Fed. 158; *The Frank Gilmore*, 73 Fed. 686; *Anderson* v. *Pacific Coast Co.*, 99 Fed. 109, 111; *United Transp. & Lighterage Co.*, v. *New York & Baltimore Transp. Line*, 180 Fed. 902.

*North Star*, 106 U. S. 17, 27.   Later, our admiralty courts recognized the propriety of affording affirmative relief by a cross-libel, in analogy to the cross-bill in equity.[10]   The procedure on cross-libels and their scope remained, however, unsettled.[11]

Rule 53 was doubtless suggested by § 34 of the English Admiralty Court Act.[12]   By that provision, the court was authorized, in certain cases, to suspend proceedings in the original cause until security had been given to answer judgment in the " cross cause." [13]   The power was in its

---

[10] The earliest reported case in which the right to file a cross-libel (as distinguished from a cross-action) was definitely recognized appears to be *Snow* v. *Carruth*, 1 Sprague, 324, 327 (1856).   Compare *The Hudson*, Olcott, 396 (1846); *Ward* v. *Ogdensburgh*, 5 McLean, 622 (1853); *Kennedy* v. *Dodge*, 1 Ben. 311, 316 (1867).

[11] *Ward* v. *Chamberlain*, 21 How. 572, 574 (1858), declared that on the cross-libel process must be taken out and served in the usual way. See *The Ping-On* v. *Blethen*, 11 Fed. 607, 611; *The Edward H. Blake*, 92 Fed. 202, 206.   *Nichols v. Tremlett*, 1 Sprague, 361, 365 (1857), held that substituted service of the cross-libel could not be made upon the proctor of an original non-resident libelant; but that the court had power to compel submission to the jurisdiction by staying proceedings on the original libel until an appearance was entered on the cross-libel.   The power to order substituted service of the cross-libel on the proctor of a non-resident libelant was still considered debatable in 1894.   *The Eliza Lines*, 61 Fed. 308, 322–324.   See also *The Sapphire*, 18 Wall. 51, 52, 56; *The Dove*, 91 U. S. 381; *Bowker* v. *United States*, 186 U. S. 135, 140.

[12] See *Old Dominion S. S. Co.* v. *Kufahl*, 100 Fed. 331.

[13] 24 & 25 Vict., c. 10, § 34.   " The High Court of Admiralty may, on the application of the defendant in any cause of damage, and on his instituting a cross cause for the damage sustained by him in respect of the same collision, direct that the principal cause and the cross cause be heard at the same time and upon the same evidence; and if in the principal cause the ship of the defendant has been arrested or security given by him to answer judgment, and in the cross cause the ship of the plaintiff cannot be arrested, and security has not been given to answer judgment therein, the Court may, if it think fit, suspend the proceedings in the principal cause, until security has been given to answer judgment in the cross cause."   The same provision was introduced in Ireland in 1867, 30 and 31 Vict., c. 114, § 72.

terms limited to cases in which the ship of the original defendant had been arrested or he had given bail. The courts held that the act does not apply where the original libel was *in personam;*[14] and that in actions *in rem,* it had, thereunder, no power to order a stay where there had been no arrest and the defendant had given bail voluntarily.[15] Rule 53 did not so limit the power to suits *in rem.* For, while process in the nature of foreign attachment in suits *in personam* fell into disuse in England, it had become the established practice in this country.[16] Neither was Rule 53 in terms limited to suits where the original libelant had made an arrest or attachment. But, although it remained in force, unmodified, for more than half a century, no reported case discloses that a stay was ordered under it, except where the original respondent had been obliged to give security in order to obtain release of the ship or of attached property.[17] Here, as in England, the purpose of the provision was declared to be to place the parties on an

---

[14] *The Amazon,* 36 L. J. Adm. (N. S.) 4; *The Rougemont,* (1893) P. 275, 276-279; 1 Halsbury, Laws of England, 95, note (*s*).

[15] *The Alne Holme,* 4 Asp. 591.

[16] *Manro* v. *Almeida,* 10 Wheat. 473; *Atkins* v. *Disintegrating Co.,* 18 Wall. 272; *Louisiana Insurance Co.* v. *Nickerson,* 2 Low. 310; *Rosasco* v. *Thompson,* 242 Fed. 527. Compare Williams & Bruce, Admiralty Jurisdiction & Practice (3rd ed.), 19; Roscoe, Admiralty Practice (3rd ed.), 44, note (*c*).

[17] In *Franklin Sugar-Refining Co.* v. *Funch,* 66 Fed. 342, 343, it was doubted whether Rule 53 applied where the original libel was *in personam* and no security was exacted. In the following cases *in rem,* in which the stay was ordered, the original libelant had caused the ship to be arrested. *The Toledo,* 1 Brown Adm. 445; *The George H. Parker,* 1 Flippin, 606; *Vianello* v. *The Credit Lyonnais,* 15 Fed. 637; *Empresa Maritima a Vapor* v. *North & South American Steam Nav. Co.,* 16 Fed. 502; *The Electron,* 48 Fed. 689; *The Highland Light,* 88 Fed. 296; *Old Dominion S. S. Co.* v. *Kufahl,* 100 *Fed.* 331; *Jacobsen* v. *Lewis Klondike Expedition Co.,* 112 Fed. 73; *The Gloria,* 267 Fed. 929; 286 Fed. 188; *The F. J. Luckenbach,* 267 Fed. 931; 286 Fed. 188. In the following cases in which the stay was ordered the suit

equality as regards security.[18]   And, under it, security to satisfy the counter claim could not be exacted by means of a stay, unless the original libelant had compelled the giving of such security to satisfy his own claim.

The new phrases introduced in Rule 50 were not designed to introduce any new practice concerning cross-libels.   Their purpose was to formulate the practice which had become settled.   This is true of those relating to the giving of security, as it is of those concerning the character

---

was *in personam,* but respondent's property was attached.   *Compagnie Universelle, etc.* v. *Belloni,* 45 Fed. 587 (see 123 Fed. 332, 333); *Lochmore S. S. Co.* v. *Hagar,* 78 Fed. 642.   In *Genthner* v. *Wiley,* 85 Fed. 797, the original papers disclose that no attachment was made or bond given; and that, after the order, the bill and cross-bill were dismissed by agreement.   In the following cases where the original suit was *in personam,* the stay was denied in the exercise of discretion. *Franklin Sugar-Refining Co.* v. *Funch,* 66 Fed. 342; 73 Fed. 844; *Morse Ironworks & Dry Dock Co.* v. *Luckenbach,* 123 Fed. 332; *Chesbrough* v. *Boston Elevated Ry. Co.,* 250 Fed. 922; *Interstate Lighterage & Transp. Co.* v. *Newtown Creek Towing Co.,* 259 Fed. 318; *Prince Line* v. *Mayer & Lage,* 264 Fed. 856.   Also in *The Transit,* 210 Fed. 575.   In *The Steamer Bristol,* 4 Ben. 55, the stay was denied because the cross-action was *in rem,* the vessel was without the jurisdiction, and process was not served on the cross-respondent. In *Crowell* v. *The Theresa Wolf,* 4 Fed. 152, and *Southwestern Transp. Co.* v. *Pittsburg Coal Co.,* 42 Fed. 920, the stay was denied because the counterclaim was not a proper subject for a cross-libel.   See also *The Owego,* 289 Fed. 263.

[18] *The Cameo,* Lush, 408, 409; *The Cl   .teh,* L. R. 4 A. & E. 120, 122; *The Newbattle,* 10 P. D. 33, 35.   See also *The Breadalbane,* L. R. 7 P. D. 186, 187 (1881); *The Helenslea,* L. R. 7 P. D. 57, 59 (1882); *The Stoomvaart Maatschappy Nederland* v. *P. & O. S. N. Co.,* L. R. 7 A. C. 795, 821 (1882); *The Alexander,* 5 Asp. 89 (1883); *The Rougemont* (1893) P. 275; *Imperial Japanese Government* v. *P. & O. S. N. Co.,* (1895) A. C. 644, 659-60; *The James Westoll* (1905) P. 47, 51.   Williams & Bruce, Admiralty Jurisdiction & Practice (3rd ed), 108, 370.

In *Empresa Maritima a Vapor* v. *North & South American Steam Nav. Co.,* 16 Fed. 502, 504, Judge Addison Brown said: . "The object of rule 53, I cannot doubt, was that in cases of cross-demands upon the

of the claims which may be asserted by means of a cross-libel.[19]　The answer to the question of the Circuit Court of Appeals is　　　　　　　　　　　　　　　*No.*

---

same subject of litigation both parties should stand upon equal terms as regards security. It was designed, where the libelants in a suit *in rem,* through the arrest of the property, exact and obtain security for their own demand, that in a cross-suit *in personam* for a counterclaim in respect to the same subject of litigation, the defendants in the former suit should likewise be entitled to security for the payment of their demands, in case the decision of the court upon the point in controversy should be in their favor. The rule was designed to correct the inequality and injustice of the process of court *in rem* being used to obtain security in favor of one party, in reference to a single subject of dispute, while it was denied to the other."

[19] Compare *Bowker* v. *United States,* 186 U. S. 135, 141; *Vianello* v. *The Credit Lyonnais,* 15 Fed. 637; *The C. B. Sanford,* 22 Fed. 863; *The Zouave,* 29 Fed. 296; *The Electron,* 48 Fed. 689; *Genthner* v. *Wiley,* 85 Fed. 797; *The Highland Light,* 88 Fed. 296; *George D. Emery Co.* v. *Tweedie Trading Co.,* 143 Fed. 144; *The Venezuela,* 173 Fed. 834; *United Transp. & Lighterage Co.* v. *New York & Baltimore Transp. Line,* 180 Fed. 902; 185 Fed. 386; *The Alliance,* 236 Fed. 361. See also *Brooklyn & N. Y. Ferry Co.* v. *The Morrisania,* 35 Fed. 558; *The Medusa,* 47 Fed. 821.