**EASTERN TRANSP. CO. v. UNITED STATES et al.**

**THE MARIE H. BROWN.**
**THE A. L. WALKER.**

United States District Court
E. D. New York.

May 31, 1951.

Foley & Martin, New York City, for libellant and respondent-impleaded. Christopher E. Heckman, New York City, Francis A. Wade, Hicksville, N. Y., of counsel.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., for United States of America. Gilbert S. Fleischer, New York City, of counsel.

GALSTON, District Judge.

This is a motion by the United States of America, respondent, pursuant to Admiralty Rule 50, 28 U.S.C.A., for a stay of the proceedings in the libel brought by Eastern Transportation Company against the United States, as owner of the steamship, Joseph Murgas, until the libellant shall have pledged proper security on behalf of its barge Marie H. Brown and tug, A. L. Walker, in the cross-libel brought by the United States.

The main libel was brought by Eastern Transportation Company against the United States, claiming damages in the amount of $60,000, as the result of a collision between the Marie H. Brown, in tow of the A. L. Walker, and the government-owned SS Joseph Murgas, in the vicinity of Throggs Neck, New York, on November 21, 1945. Although the libel does not indicate its statutory basis, it is, apparently, brought under sec. 2 of the Suits in Admiralty Act of March 9, 1920, 46 U.S.C.A. § 742, authoriing a libel "in personam" by or against vessels of the United States. In its libel, the libellant alleges that "Libellant hereby elects to have this cause proceed in accordance with the principles of libel in rem and desires also to seek relief in personam." (Par. 10th)

The United States filed a cross-libel against the Eastern Transportation Company, the barge, Marie H. Brown, and the tug, A. L. Walker, alleging that the collision and resultant damages were due solely to the fault, neglect and want of care of the respondents, and claiming damages in the sum of $50,000.

Admiralty Rule 50 provides: "Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claim-

ant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs." 28 U.S. C.A.

In Washington-Southern Navigation Company v. Baltimore & Philadelphia Steamboat Company, 263 U.S. 629, 44 S. Ct. 220, 68 L.Ed. 480, the Supreme Court held that Rule 50 did not empower the District Court to stay proceedings in the original suit until the original libellant shall have given security to respond to the counterclaim, in a case where the original libel was "in personam" and the original respondent (the cross-libellant) has given the security voluntarily; that is, of his own motion and without compulsion. Mr. Justice Brandeis, in his opinion, pointed out that though former Rule 53 (now Rule 50) did not limit the power to order a stay of suits in rem, or of suits where the original libellant had effected an arrest or attachment, " * * * no reported case discloses that a stay was ordered under it, except where the original respondent had been *obliged* to give security in order to obtain release of the ship or of attached property." (Emphasis added.) 263 U.S. 629, at page 638, 44 S.Ct. 220 at page 223.

The vessels of the United States are exempt from arrest or seizure under the Suits in Admiralty Act, 46 U.S.C.A. § 741. The Act also provides that " * * * Neither the United States nor such corporation shall be required to give any bond or admiralty stipulation on any proceeding brought hereunder." 46 U.S.C.A. § 743.

The Government contends that since the libellant elected to proceed as "in rem", the libel should be regarded as an "in rem" suit; and that since vessels of the United States are exempt from seizure, the credit of the United States is substituted for the vessel. Therefore, it concludes, the proceedings should be regarded "just as if the

vessel had, in fact, been seized and claimed by the United States and released on bond."

Although the Suits in Admiralty Act permits a libellant to elect to proceed in accordance with the principles of libels in rem, it also provides: " * * * Election so to proceed shall not preclude the libellant in any proper case from seeking relief in personam in the same suit. * * * " 46 U.S.C.A. § 743.

In Nahmeh v. United States, 267 U.S. 122, 45 S.Ct. 277, 69 L.Ed. 536, the Court held that a suit brought in the district where the libellant resided was a suit brought in accordance with sec. 2 of the Suits in Admiralty Act, even though the suit would have been an action in rem between private parties (where jurisdiction would lie only in the district where the vessel was at the date of the filing of the libel), and that it made no difference where the vessel then was, provided only that it was within the jurisdiction of the United States. The Court expressly overruled The Isonomia, 2 Cir., 285 F. 516, 518, where the libellant elected to "proceed in accordance with the principles of libels in rem", and the Circuit Court of Appeals of the Second Circuit held that where there is such an election the libellant can bring suit only if a libel in rem would lie in an action between private persons. Therefore, the election by the libellant in the instant case, in and of itself, does not require the conclusion that the libel must be regarded as one "in rem" if the suit had been between private persons.

True, the purpose of Admiralty Rule 50 is to place the parties on an equal basis before trial as far as security is concerned. Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., supra. However, the equality referred to by Mr. Justice Brandeis is measured, not by the fact that the respondent in the main libel had given security, but by the more restricted test of whether the respondent had been "obliged" to do so. In the Court's own language: " * * * the purpose of the provision was declared to be to place the parties on an equality as regards security. And, under it, security to satisfy the counterclaim could not be exacted by means of a stay, unless the original libellant had compelled the giving of such security to satisfy his own claim." 263 U.S. at page 639, 44 S.Ct. at page 223.

Admittedly, the libellant could not compel the United States to give security here because of the statutory prohibition. Moreover, even assuming that the "credit of the United States" is at least the equivalent of a bond given by a private person, insofar as either may be assurance that the respondent will respond in damages to the claim set forth, that would not be sufficient to equate the two under Rule 50. In the Washington-Southern Company case, the respondent in the main libel had voluntarily given security, and the Court held that it, as cross-libellant, was not entitled to stay the proceedings under Rule 50.

It is well settled, of course, that the United States cannot be sued without its consent. The reason, apparently, for the provision in the Suits in Admiralty Act exempting vessels of the United States from seizure was not because of any doubt of the principle of sovereign immunity extending to vessels owned by the United States, but to restore the immunity from seizure which was taken away from merchant vessels owned by the United States by the Shipping Act of 1916, 46 U.S.C.A. § 801 et seq., as the Act was interpreted by the Supreme Court in the case of The Lake Monroe, 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962. See Blamberg Brothers v. United States, 260 U.S. 452, 458, 43 S.Ct. 179, 67 L.Ed. 346; The Isonomia, supra. Consequently, the most that can be said for the Government's contention here that the credit of the United States is the equivalent of a bond given by a private person, is that it is given voluntarily of the Government's own motion and without compulsion of any court process.

In coming into court to assert a claim by way of a cross-libel, the United States takes the position of a private suitor, and must be treated in the same manner as a private litigant. Since the voluntary giving of security by a private person, who is the respondent in the main libel and libellant in the cross-libel, does not empower

the court to stay proceedings in the main action until the original libellant shall have given security in the cross-libel, there is no power in the court to grant a stay under Rule 50 on behalf of the Government here.

George M. Morrell Co., Inc., v. SS Asquam, etc., 1924 A.M.C. 182, is the only case cited by the Government in which the United States, as cross-libellant, attempted to stay the main proceeding under Rule 50 until the respondent in the cross-libel gave security. There is a question whether the court there granted the Government's motion on the basis of Rule 50, for the opinion states:

"It will be seen that this rule applies only where the claimant in the original suit has given security to respondent in damages. It has been held that the question of security rests in the sound discretion of the court. See The Winnecone, 1923 A.M.C. 428.

" * * * I am of the opinion, therefore, that this is a case which warrants the court in exercising its discretion as requested by the respondent and requiring security to be given."

It would appear, from the language quoted, the court relied upon some right to exercise discretion outside of Rule 50. It is interesting to note that the case cited, The Winnecone, was one where a similar motion by the Government was denied. The court in The Winnecone case rejected the contention that "the faith of the Government pledged to the payment of any judgment that may be rendered in favor of the libellant," brought the matter within the provisions of Rule 50. Moreover, the George M. Morrell case was decided before the Supreme Court's decision in the Washington-Southern Navigation Company case.

The other cases cited by the Government in which the stay was ordered, were cases in rem in which the original libellant had caused the ship to be arrested, and the respondent had been obliged to give security in order to obtain release of the ship. See Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., supra, 263 U.S. at page 638, 44 S.Ct. 220.

In view of the foregoing determination, it is unnecessary to decide what the effect is of the bankruptcy of the original libellant upon the Government's alleged right to relief under Rule 50.

The motion of the Government is denied. Settle order.