Jacob J. SMITH, Plaintiff,

v.

MORRISON–KNUDSEN COMPANY, Inc., Bates & Rogers Construction Corp., Ralph E. Mills Co., Inc., Blythe Bros. Company, and Nello L. Teer Company, individually and as joint venturers doing business under the name and style of Atlas Constructors and Atlas Constructors, Defendants.

United States District Court
S. D. New York.
April 30, 1958.

Pepper & Siegel, New York City, for plaintiff. Morton Pepper, Benjamin Pepper, New York City, of counsel.

Paul W. Williams, U. S. Atty. for S. D. New York, New York City, for defendants. Gerard Goettel, Asst. U. S. Atty., New York City, of counsel.

HERLANDS, District Judge.

Should plaintiff be permitted to take his own deposition upon written interrogatories submitted to himself, where the reasons advanced for such procedure are (1) that plaintiff will continue to be employed abroad for an indefinite period of time as a supervising electrician at a United States air base being constructed in Spain, (2) that plaintiff would lose his job were he required to leave Spain and appear here, either to take his deposition or to testify at the trial, and (3) that plaintiff would be subject to substantial traveling expenses were he required to leave Spain and appear here, either to take his deposition or to testify at the trial? The question is apparently one of novel impression.

That question is raised by defendants' motion for an order "that the interrogatories of the plaintiff, to be taken by the plaintiff * * * shall not be taken except upon oral examination." F.R.Civ.P. rule 31(d), 28 U.S.C.A. Rule 31(d) relevantly provides that the Court may grant a motion for an oral examination upon "good cause shown." Plaintiff had served notice, pursuant to F.R.C.P. rule 31, that he would take his own deposition upon 157 specified, written interrogatories to be answered "by the plaintiff * * * before the United States Consul General in Madrid, Spain."

Defendants' moving affidavit, which is by defendants' attorney, contains the following factual assertions:

1. The primary questions to be resolved at the trial—"whether there was just cause for the discharge of the plaintiff from his employment with the defendant" and whether plaintiff's employment contract was orally modified by

defendants' agents—present "sharp issues of credibility" (para. 3);

2. In view of the fact that plaintiff does not intend to present himself personally in Court upon the trial herein before a jury, the issues of credibility can be more effectively determined by means of an oral deposition of plaintiff than by plaintiff's written answers to his written interrogatories (para. 3);

3. By attempting to use plaintiff's written answers to his own interrogatories in lieu of *viva voce* trial testimony, plaintiff is taking unfair advantage of defendants' past cooperation in having waived the necessity for plaintiff's compliance with a certain order (filed September 28, 1955) of District Judge Ryan, who had directed plaintiff to submit to a deposition to be taken orally by defendants within one year from the date of that order and at least six months before the trial of the action (paragraphs 4–6); and

4. Plaintiff's and defendants' attorneys had agreed "that the plaintiff would be personally present at trial" (para. 5).

Disputing each of the foregoing assertions, plaintiff has submitted his attorney's affidavit in which it is declared that the determinative issues are not sharply controverted; that most of the defendants' proof is documentary; that defendants will not be prejudiced by the procedure suggested by plaintiff; that plaintiff is not taking advantage of defendants; and that there was no agreement that plaintiff would personally be on hand for the trial.

On the basis of the attorneys' affidavits now before the Court, it is impossible to determine whether there was an agreement to produce plaintiff in person at the trial.

It may be observed that, in the form in which this motion was originally argued and submitted to the Court, neither the moving nor opposing papers presented an affidavit by the parties themselves, as distinguished from their attorneys.

In an effort to resolve this tug-of-words, the Court has examined the entire official file in this case from its inception on March 19, 1954, when the complaint was filed. In addition, the Court has held two post-argument conferences with the attorneys for the purpose of having the parties themselves submit affidavits with respect to such factual matters as: the prospective duration of plaintiff's employment abroad; the possibility of plaintiff's returning to the United States temporarily to attend his deposition-taking here or to attend the trial, without subjecting himself to the loss of employment; and the amount of traveling expenses actually involved.

A statement of the background and prior proceedings had herein will place in perspective the present motion and the litigation out of which it arises.

For the past thirteen years (since about 1943), plaintiff has been working on various construction jobs overseas, except for the period during 1953–1954 when he was unemployed, subsequent to and because of his allegedly wrongful discharge from employment by defendants herein. Plaintiff has worked in different regions throughout the world, including the Philippine Islands, Mariana Islands, Alaska and Morocco. He is now working near the City of Madrid, Spain. "He (plaintiff) has no family ties which would require his return to the United States. He perfers the high pay offered for overseas work and intends to continue in this work so long as it is possible to secure employment in it" (affidavit of plaintiff's attorney, sworn to September 6, 1955). "Deponent (plaintiff) preferred the high pay and tax advantages offered by overseas work" (plaintiff's affidavit, sworn to April 13, 1956).

In May 1953, plaintiff was employed under contract by defendants as superintendent of electrical installations at

certain air bases which were then being constructed in Morocco for the United States Air Force.

The action is for breach of an employment contract and libel, both allegedly committed in May 1953. The defendants are five Government construction contractors. The United States of America has undertaken the defense, apparently pursuant to some contractual arrangement with the named defendants.

The complaint sets forth the following five claims for damages:

The first claim, seeking $50,000 damages, is based upon defendants' alleged wrongful discharge from employment on or about May 17, 1953. The employment was allegedly pursuant to a written contract, entered into on or about May 12, 1952, and allegedly modified in or about September 1952. (A motion to dismiss this claim for legal insufficiency was denied by Judge Noonan on June 25, 1957.)

The second claim, seeking $50,000 damages, is based upon the aforesaid discharge allegedly in violation of the said modified contract as renewed for one year on or about May 12, 1953.

The third claim, seeking $75,000 damages, is based upon an alleged libel published on or about May 17, 1953 in defendants' daily newspaper or personnel bulletin, stating that plaintiff had been "Discharged for Cause."

The fourth claim, seeking $75,000 damages, apparently is predicated upon a combination of the facts pleaded in the first and third claims.

The fifth claim, seeking $75,000 damages, is based upon an alleged libel published on or about May 18, 1953 and for some days thereafter in the form of an "Incident Report."

The prayer for relief demands a total of $150,000: $50,000 on the first and second claims; $75,000 on the third, fourth and fifth claims; and $25,000 as punitive damages. The answer, filed May 10, 1954, consists of denials of the material allegations of the complaint, several qualified admissions, and a number of separate and complete defenses to the various claims. Among the factual issues raised by the affirmative defenses are the following: that defendants terminated plaintiff's employment "for cause"; and "that plaintiff had used alcohol in an immoderate fashion and had negligently damaged two vehicles belonging to the Department of the Army of the United States."

By notice filed May 20, 1954, plaintiff demanded a trial by jury. Note of issue was filed on June 10, 1954.

On or about May 17, 1955, the attorneys for the parties requested that this action be adjourned to the foot of the Reserve Calendar for October 3, 1955, for the reason that the plaintiff "will not return to New York for approximately two or three months."

On August 15, 1955, defendants served and filed a notice to take plaintiff's deposition *as an adverse party* "upon oral examination" on August 24, 1955.[1] On September 7, 1955, plaintiff served and filed a notice of motion "for an order vacating the notice to take the deposition

---

1. On August 22, 1955, defendants signed and filed a "Notice of Non-Readiness For Trial" in which they stated that as a result of plaintiff's not having been in New York during the major portion of the period during which this action has been pending, "the defendants have been unable to take his deposition before trial which is an essential element in the preparation of this case."

On August 23, 1955, plaintiff moved for an order requiring defendants to .

produce and to permit plaintiff to inspect and copy at least eight specified reports, memoranda and statements relating to the accident of May 8, 1953. This motion was consented to by defendants; and an appropriate order was filed on December 1, 1955.

On October 10, 1955, the case was marked off the trial calendar upon stipulation of the attorneys.

of the plaintiff." In opposing the taking of plaintiff's deposition as an adverse party upon *oral* examination, plaintiff submitted his attorney's affidavit in which many of the same circumstances— now relied on by plaintiff to resist defendants' present demand that plaintiff's deposition in plaintiff's own behalf be taken orally—were detailed to Judge Ryan. In his order (filed September 28, 1955), Judge Ryan directed "that plaintiff submit to the deposition to be conducted by the defendants within one year from the date of this order and at least six months before the trial of this action."

Following Judge Ryan's order, the parties' attorneys negotiated a substitute arrangement with respect to plaintiff's deposition as an adverse party, whereby Judge Ryan's order was completely supplanted and an affidavit by plaintiff was accepted by defendants in lieu of plaintiff's oral deposition as an adverse party.

The story of the negotiations and resulting arrangement is detailed in the November 21, 1957 opposing affidavit of plaintiff's attorney (pp. 2–4; Exhibits A and B). Pursuant to the arrangement, there was delivered to defendants on May 10, 1956, a ten-page affidavit by plaintiff, sworn to April 13, 1956 in Korea. This affidavit devotes one paragraph (on page 7) to the happening of an accident on May 8, 1953 and one paragraph (on pages 9–10) to the happening of an accident on November 6, 1952.

Between August 19, 1957 and November 14, 1957, there were other proceedings with respect to depositions and requests for admissions, as footnoted.[2]

It is clear from the Court's study of the papers that this litigation is being hard fought and intensively prepared for trial by both sides.

In their memorandum submitted upon the present motion, defendants list fifteen "disputed factual issues." The Court's examination of the case file indicates that the defendants have good reason to believe that most, if not all, of the said fifteen items will present factual controversies upon the trial and that the plaintiff's testimony, both on direct and cross-examination, with respect thereto will be material and relevant.

We turn now to a consideration of the legal arguments advanced by the parties on the motion at bar.

### I.

Defendants argue that under no circumstances do Federal Rules of Civil

---

2. On August 19, 1957, plaintiff filed a notice to answer interrogatories requiring defendants to answer thirty-eight interrogatories. At first, defendants moved to bring on for hearing their objections to ten of the interrogatories. That motion, however, was withdrawn on October 8, 1957. On October 10, 1957, defendants served and filed their answers to all of the interrogatories. Among the answers, was one that defendants had obtained from plaintiff a written statement regarding the May 8, 1953 accident, a copy of which was attached to defendants' answer (Interrogatories 7 and 8; Answers 7 and 8; these erroneously cite the date of the accident as "May 8, 1957").

On October 29, 1957, defendants served interrogatories on plaintiff's attorney with respect to any alleged modification or novation of plaintiff's employment contract.

On November 1, 1957, defendants served requests for eight specific admissions (F.R.C.P., rule 36) on plaintiff's attorney. These requests cover two pictures relating to an alleged accident on May 8, 1953; minutes of certain proceedings in the Police Court of Casablanca, Morocco; translation of the preceding item; transcript of a report of an alleged accident on March 25, 1953; translation of a certain French letter received by one of the defendants; plaintiff's employment from February 8, 1954 to December 24, 1954; and plaintiff's reason for leaving certain prior employment as expressed by him in answering a job application.

On November 14, 1957, plaintiff served notice to take the oral deposition of one of the defendants, by two of its employees, on December 3, 1957 and successive days.

Procedure, rules 26(a) and 31, permit a plaintiff to take his own deposition upon written interrogatories. Defendants mistakenly rely upon decisions interpreting F.R.C.P., rule 33, as distinguished from rules 26(a) and 31. Thus, Woods v. Kornfeld, D.C.Pa.1949, 9 F.R.D. 196, cited by defendants, dealt with interrogatories propounded to the adversary under Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and not to the party himself. The case is, therefore, not in point.

Similarly, Batemore, Inc., v. Standard Brands, Inc., D.C.Mo.1947, 7 F.R.D. 455, cited by defendants, dealt with objections to interrogatories propounded by the plaintiff to the defendant under Rule 33. It is, therefore, not pertinent to the present problem.

Colorado Milling & Elevator Co. v. American Cyanamid Co., D.C.Mo.1951, 11 F.R.D. 580, cited by defendants, likewise dealt with plaintiff's objections to defendant's interrogatories addressed to the plaintiff under Rule 33.

C. F. Simonin's Sons, Inc., v. American Can Co., D.C.Pa.1939, 26 F.Supp. 420, cited by defendants, sustained defendant's objections to plaintiff's interrogatories addressed to defendant under Rule 33 of the Federal Rules of Civil Procedure in an action begun prior to the effective date of the Federal Rules of Civil Procedure. The District Judge said it was not feasible to apply those rules to the particular action.

A. L. Smith Iron Co. v. New York, New Haven & H. R. Co., D.C.Mass.1956, 18 F.R.D. 389, cited by defendants, considered the problem whether the two defendants may not be considered as "adverse" vis-à-vis each other for purposes of Rule 33, where the defendant insurance company filed interrogatories addressed to the defendant railroad under Rule 33. The District Judge held (at page 389) "that they are not adverse parties within the meaning of the Rule [Rule 33]," and granted a motion to strike the interrogatories.

The defendants also argue that the words "any party" in F.R.C.P. 26(a) and 31, should be restricted to mean only an *adverse* party. There is no merit to that contention.

Rule 26(a) explicitly reads: "Any party may take the testimony of any person, *including a party*, by deposition upon oral examination or written interrogatories * * *." (Emphasis supplied.) Rule 31 explicitly reads: "A party desiring to take the deposition of *any person* upon written interrogatories * * *." (Emphasis supplied.) On the other hand, Rule 33 is expressly limited by its terms to "any *adverse* party." (Emphasis supplied.)

The logical conclusion, dictated by the plain language of the rules, is that rules 26(a) and 31 apply to any person, including a party, while rule 33 applies only to an adverse party.

Rules of procedure, like principles of substantive law, should be interpreted to meet the challenge of changing conditions of life and litigation. Today's ease and speed of travel and the occupational dispersion of Americans throughout the world,[3] will increasingly place parties and witnesses outside the forum and even outside the United States Problems created by that mobility can be solved by our law's inherent flexibility. Accordingly, rules 26(a) and

---

**3.** In an issue devoted to the subject "America's World Abroad," a current publication states: "The strongest evidence of U. S. commitment is the number of Americans overseas. The 580,000 civilian residents abroad alone are one in every 300 Americans." An analysis of United States civilians resident abroad in 1957 includes the following totals:

| | |
|---|---|
| Government Employees | 98,700 |
| Business and Professional | 136,800 |
| Educators and Students | 65,400 |
| Others | 279,000" |

Life, vol. 43, no. 26, December 23, 1957, p. 21

31 have been given flexible interpretation.

## II.

Such decisions as exist in this field of the law indicate that there may be circumstances under which a plaintiff may take his own deposition upon written interrogatories. The present case, however, is *res integra*.

Because of its factual resemblance to the present case, Richmond v. Brooks, 2 Cir., 1955, 227 F.2d 490 has been discussed by both sides. The following detailed consideration of the Richmond case becomes necessary.

Plaintiff, Mrs. Richmond, a resident of California and conducting a business there, brought suit in the New York Supreme Court against her former husband to collect loans she had made to him. Defendant-husband was a New York resident. Defendant removed the action to the United States District Court, where the case was tried before a jury.

During the pre-trial period, depositions of the parties were taken. Defendant's deposition had been taken in New York. Plaintiff's deposition had been taken by plaintiff herself in California "by interrogatories and cross interrogatories" (at page 491).

At the trial, plaintiff offered her own deposition "as her proof" (at page 491). The trial judge refused to receive it and later dismissed her action for failure of proof. This was held to be reversible error. The trial judge had reasoned "that the defendant was entitled to require the presence of the plaintiff as a part of her case and the opportunity to cross-examine her before the jury" (at page 491).

In the case at bar, defendants' memorandum (p 7) incorrectly states that Mrs. Richmond's interrogatories had been "taken by the adverse party [defendant]." The Court's examination of the record on appeal in the Richmond case discloses that the notice to take plaintiff's (Mrs. Richmond's) deposition upon written interrogatories had been given by plaintiff herself and that her deposition had been taken by plaintiff, with cross-interrogatories submitted by defendant. In the Richmond case, plaintiff-appellant's brief (p. 2) states:

"A notice dated November 16, 1953 (15a) was served upon the defendant's attorney that plaintiff would take her own deposition upon 166 attached written interrogatories. The notice conformed with Rule 31 of the Rules of Civil Procedure."

The Richmond case thus clearly involved the taking of plaintiff's own deposition as a part of plaintiff's case upon written interrogatories submitted by plaintiff.

However, it is important to call attention to three features of the Richmond case that distinguish it from the case at bar: (1) the defendant therein did not object to the plaintiff's taking her own deposition; (2) the defendant therein was content to conduct his cross-examination of plaintiff upon written interrogatories, without requesting leave for an oral cross-examination; and (3) both the appellate and trial courts therein were concerned with the evidentiary questions of the admissibility of the plaintiff's deposition on the trial, and not with the pre-trial procedural question of the propriety of plaintiff's taking her own deposition. In view of the three features adverted to, it would appear that the Richmond case did not adjudicate the precise point raised in the case at bar.

Chief Judge Clark's opinion[e] in the Richmond case does, however, illumine some of the considerations of policy and discretion that are necessarily involved in the disposition of the motion at bar. Chief Judge Clark, citing F.R.C.P. rules 26(a), 26(d) (3), 31 and 33, held that rule 26(d) may be applied to the plaintiff's proof under certain circumstances, and that a defendant did not have the absolute right to require the presence of the plaintiff as a part of plaintiff's case and the opportunity to cross-examine

plaintiff before the jury. Judge Clark declared that rule 26(d) applied "without exception equally to plaintiffs and defendants" (at page 492).

Moreover, Judge Clark stated that the issue in the Richmond case had been "substantially settled" (at page 492) in an admiralty decision [Hyam v. American Export Lines, 2 Cir., 1954, 213 F.2d 221], a decision said by Judge Clark to be "in direct point" because of its reliance "upon the civil discovery rules" (227 F.2d at page 492). After detailing the facts of the Hyam case, Judge Clark concluded (at page 492):

> " * * * a suitor not able to afford a New York trip should not be denied all remedy here. There is nothing in the general law to demand such a result; * * *."

In the Hyam case, op. cit. supra, the Court of Appeals reversed the trial judge, who had entered a decree dismissing the libel on the merits because of libelant's failure to appear for a pre-trial examination. In that case, libelant, a resident of Bombay, India, sued in the Southern District of New York for cargo damage on a shipment carried by respondent from Philadelphia to Bombay. After issue had been joined, respondent served a notice to take plaintiff's deposition *as an adverse party* in New York.

Thereafter, but before the return date of the respondent's notice to take plaintiff's deposition, plaintiff moved under Admiralty Rule 32 of the district court [F.R.Civ.P. 30(b)] for an order directing that plaintiff's deposition be taken by respondent upon written interrogatories. Respondent countered with the suggestion that libelant's deposition be taken orally in Bombay upon an open commission or by local solicitors appointed by each side, the cost thereof to both sides to be borne by libelant. Libelant refused to accept this proposal and stood on its motion that libelant's deposition be taken by respondent upon written interrogatories.

In that posture of the case, the district judge denied libelant's motion and ordered libelant to appear for examination in New York. Libelant did not appear on the appointed day; respondent moved to dismiss the libel for failure of the libelant to comply with the court's order; and respondent's motion to dismiss was granted. This was held to be error.

It is clear that the pivotal issue in the Hyam case revolved around the specific procedure demanded by the respondent in taking the libelant's deposition as an adverse party—not the issue in the case at bar. The Court of Appeals decided that, under the exceptional circumstances of the Hyam case, the trial judge had failed to consider important factors in reaching his conclusion that the respondent was entitled to take libelant's deposition on oral examination at the situs of the forum rather than at the libelant's place of business and residence in Bombay upon written interrogatories.

In his concluding observation, Judge [now Mr. Justice] Harlan said (213 F.2d at page 223):

> "The federal courts are open to foreign suitors as to others, and procedural rules are not to be construed in such fashion as to impose conditions on litigants which in their practical effect amount to a denial of jurisdiction. See Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 1924, 263 U.S. 629, 44 S.Ct. 220, 68 L.Ed. 480."

While Judge Harlan's opinion throws light upon the factors that should be considered by a district judge in the exercise of his discretion in determining the place where and the manner in which pre-trial depositions should be conducted, the Hyam case did not pass upon the crucial issue raised in the case at bar.

Had plaintiff herein shown the existence of exceptional circumstances, there could be no proper objection as a matter of principle to plaintiff's taking his own deposition in Spain upon written

interrogatories under F.R.C.P. rules 26 and 31.

### III.

On December 30, 1957, the Court held a second post-argument conference with counsel. The minutes of that conference have been officially reported and transcribed, and are part of the record herein.

At that conference, the Court called counsel's attention to the fact that "neither side has submitted an affidavit by any of the parties themselves or by a person having personal knowledge" of the following factual matters:

"1(a) Whether in fact plaintiff would lose his job were he to come to the United States either to take his deposition or to attend the trial.

"1(b) Whether in fact plaintiff is entitled to leave from his job with or without pay.

"2(a) Approximately how much time would be required to take the plaintiff's deposition were he to appear in the United States for that purpose?

"2(b) Approximately how much time would be required for the plaintiff to appear and testify at the trial?

"3 What are the actual expenses involved in coming to the United States and returning to Spain?

"4 When is it expected that the case will be tried?"

The Court made the following direction:

"(1) Plaintiff should submit his own affidavit or the affidavit of someone having personal knowledge of such matters; and

"(2) Defendants likewise should submit an affidavit of someone having personal knowledge of such matters."

Pursuant to that direction, the plaintiff submitted an affidavit sworn to February 5, 1958, stating *inter alia* (1) that "all leaves of absence have been suspended" and that "leaves and vacations are obtainable only at the completion of one's employment"; (2) that he "could not approach my [his] employers at this time with a request for a leave of absence"; (3) that "if I [he] wished to come to the United States to testify in this case at this time or in the near future, I [he] would have to quit my job so that a replacement could be hired. * * * I [he] would be out of a job with very little prospect of being able to find a similar one"; (4) that the expenses of the round trip (computed on the basis of 30 days' stay in New York at $12 per diem) would amount to $1,182.60, inclusive of $822.60 for round trip airplane fare.

The evidence submitted in behalf of defendants and in accordance with the Court's direction convincingly establishes the following facts:

1. The plaintiff would not lose his job if he came to the United States for the taking of his deposition or for trial. His employers state that "his services could be spared for a period of two weeks" (Exhibit A attached to the affidavit of Gerard L. Goettel of February 13, 1958).

2. The plaintiff's deposition or his testimony at the trial itself can be taken well within one week.

3. The actual transportation expenses involved in an airline round trip between Spain and the United States ranges from $493 to $606 (Exhibit D attached to Mr. Goettel's above-cited affidavit).

This case is now on the Reserve Assignment Conference No. 2 Calendar. Upon an appropriate application to the Chief Judge of this Court, there can be a disposition of the matter of setting this case down for trial on a day certain in order to coordinate the trial date with the aforesaid two-week period available to plaintiff.

█ In view of the foregoing, the defendants' motion to vacate plaintiff's notice to take his own testimony by written interrogatories is hereby granted.

Settle order on notice.