## THE CITY OF BEAUMONT.

### BARDACH IRON & STEEL CO., Inc., v. MORGAN.

(Circuit Court of Appeals, Fourth Circuit. October 20, 1925.)

No. 2362.

**Admiralty ⊚⟿58—Dismissal of original libel, because of libelant's inability to give bond to meet cross-libelant's demand, held not required.**

Admiralty rule 50, amending former rule 53 (210 U. S. 562), does not require that libel be dismissed because of libelant's unwillingness or inability to give bond to meet demand asserted by claimant in cross-libel, after having given security in original libel; court having full discretion to determine whether it was practicable for libelant to give such security.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore, in Admiralty; Morris A. Soper, Judge.

Libel by T. B. Morgan, master of the barkentine City of Beaumont, against the Bardach Iron & Steel Company, Incorporated, claimant, which filed a cross-libel. From a

decree vacating an order staying proceedings on the original libel until filing of security to protect claim of cross-libelant, and ordering that stipulation of sum originally provided against remain in effect, claimant appeals. Affirmed.

Bruce Lowenberg, of Norfolk, Va. (George W. P. Whip, of Baltimore, Md., on the brief), for appellant.

John Henry Skeen, of Baltimore, Md. (Emory, Beeuwkes & Skeen, of Baltimore, Md., on the brief), for appellee.

Before WADDILL and ROSE, Circuit Judges, and WEBB, District Judge.

WADDILL, Circuit Judge. On the 11th of April, 1924, the appellee, T. B. Morgan, master of the barkentine City of Beaumont, hereinafter referred to as the ship, instituted its libel against the appellant, Bardach Iron & Steel Company, Incorporated, claimant, hereinafter referred to as cargo owner, to recover the sum of $8,083.20, claimed to be due for freight money for transporting 2,526 tons of scrap steel from Jacksonville, Fla., to the city of Baltimore, Md. The cargo owner, upon said libel being filed and seizure thereunder of the cargo in question, duly appeared and executed proper release bond in penalty of $7,000 and repossessed itself of the cargo. At a later date, on the 23d of April, 1925, the cargo owner aforesaid filed its cross-libel against the ship, City of Beaumont, setting up claim for damages for the transportation of the said cargo of steel, and losses in connection therewith of $19,000, and on the date in question procured an ex parte order requiring all proceedings upon the original libel to be stayed unless and until security in the sum of $19,000 be given by the ship to protect libelants in the cross-libel. The ship having failed to execute the $19,000 bond required of it, on the 15th of October, 1924, an order was procured requiring the original libelant to show cause on the 20th of October, 1924, why his libel should not be dismissed. On the 25th of October the master of the ship appeared and denied the right of the cross-libelant to secure the relief sought, and moved the court to vacate the order of the 23d of April, 1924, requiring the execution of a bond of $19,000, and further insisted that the claim asserted was exorbitant. He averred that the ship was unable to give the bond, and that the ship's owner was wholly insolvent, and could not do so; that under the circumstances the court, in the exercise of its discretion, should vacate the order and refuse to impose upon the original libelant any bond for the payment of the claim as asserted by cross-libelant.

Stipulation was entered between the parties as to the facts bearing upon the case and the ability of the shipowner to give bond at all, whereupon the court on the 31st of December, 1924, entered the decree complained of, which is as follows:

"Ordered, adjudged, and decreed, this 31st day of December, 1924, that order heretofore entered herein on the 23d of April, 1924, staying all proceedings on the original libel until security be filed by original libelant to protect the claim of the cross-libelant, be and it is hereby vacated and set aside."

"Further ordered, adjudged, and decreed that the stipulation of the sum of $7,000 filed by the claimant of the cargo provided against by original libelant and cross-libelant, stand and remain in full force and effect."

The District Court's ruling is challenged in six assignments of error, which may be stated under two heads as follows:

First, that the court erred in vacating the order of the 23d of April, 1924, staying the proceedings in the original libel until libelant therein should file a proper bond to secure cross-libelant's claim, and in not dismissing said original libel; and, second, that the court likewise erred in continuing in full force and effect the bond and stipulation of $7,000 filed by respondent in the original libel, upon delivery of the seized cargo to the claimant thereof.

These rulings present for the consideration of the court the meaning of the Fiftieth admiralty rule, as applicable to the facts in this case. It is fortunate that the Supreme Court of the United States has so recently placed its interpretation upon the same in Washington-Southern Co. v. Baltimore Co., 263 U. S. 629, 44 S. Ct. 220, 68 L. Ed. 480, in an elaborate, able, and exceedingly comprehensive opinion by Mr. Justice Brandeis. The effect of the first position taken is that the order requiring the execution of the $19,000 bond by the original libelant, not only should not have been vacated, but that said original libel should have been dismissed; that is, that because of the unwillingness or inability of the original libelant to give a bond to meet the cross-libelant's demand, his libel should have been dismissed altogether. This is precisely what the Supreme Court, in the case cited, supra, especially at page 632 (44 S. Ct. 221), in unequivocal terms

holds should not have been done, and that to do so would be entirely contrary to law and maritime rules and practices, and would tend to introduce into the admiralty a whimsical and capricious practice, that ought not lightly to be contemplated.

The suggestion that the decision in the case cited (Washington-Southern Co. v. Baltimore Co., supra) does not apply, because that was a proceeding in personam and not in rem, is manifestly without merit, as the principle involved and the purpose to be attained are the same in each class of cases. The supposed distinction sought to be availed of doubtless arose from the fact that under the English admiralty practice (section 34, English Admiralty Court Act) the taking of security to answer the judgment in cases of cross-libel did not apply to proceedings in personam. Washington-Southern Co. v. Baltimore Co., 263 U. S. 637, 638, 639, 44 S. Ct. 220, 68 L. Ed. 480, with citations given.

This distinction does not exist in the admiralty practice of this country, and the rule, now No. 50, formerly rule No. 53, under which the security was taken makes no such distinction. The purpose of the rule was manifestly to place the parties, the libelant and cross-libelant, on an equality regarding security, as far as the same could be accomplished; but it never meant to do more than could reasonably and lawfully be done to that end, within the discretion of the court, under carefully prepared rules prescribing the rights of the parties litigant and seeking to safeguard and preserve the same.

The decision in this case is based on admiralty rule 50, promulgated the 6th of December, 1920, amending former rule 53 (210 U. S. 562), and to the new rule are amendments as shown by the words thereof italicized, so that the same now reads:

"Rule 50. Whenever a cross-libel is filed upon any counterclaim arising out of the same *contract or* cause of action for which the original libel was filed, *and the respondent or claimant in the original suit shall have given security to respond in damages,* the respondent in the cross-libel shall give security in the usual amount and form to respond in damages *to the claims set forth* in said cross-libel, unless the court, for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given *unless the court otherwise directs.*"

This makes it entirely clear that where, as in this case, the claimant in the original libel had given bond to respond in damages, the respondent in the cross-libel should give bond in the usual amount to respond in damages to the claim set forth in the cross-libel "unless the court, for cause shown, shall otherwise direct," and further that the proceedings in the original libel should be stayed until such security is given "unless the court shall otherwise direct." Now, what could be plainer than this, and how could its purpose be more manifest, namely, that when one of the parties had already given security the other should be required to do likewise, where it was practicable so to do; that is, where it could be done, and with this end in view the court was given full authority and power to act and exercise its discretion in the premises.

The rule never contemplated, as is insisted in the second position stated, that, where the parties to the original libel had established their rights and obtained security, this should be lost to them, because of their inability, arising from insolvency or other good reason, to procure a bond to respond to a large claim asserted in the cross-libel, and that as a result their libel should be dismissed. This would not only be unjust, but would in effect negative and nullify the provision of the rule giving to the trial court full discretion to act upon the very subject involved, and would be entirely contrary to the ruling of the Supreme Court in the recent case hereinbefore cited.

The decision of the lower court will be affirmed, with costs.

Affirmed.