The SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Libellant,

v.

The Tank Steamer FORT FETTERMAN, her engines, tackle, equipment, appurtenances, etc., Libellee.

CHAS. KURZ & CO., Inc., as owner of the Tank Steamer Fort Fetterman, Cross-Libellant,

v.

The SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Cross-Respondent.

No. 1073.

United States District Court
E. D. South Carolina.
Charleston Division.

Dec. 18, 1956.

Affirmed April 5, 1957. See 242 F.2d 799.

T. C. Callison, Atty. Gen., Huger Sinkler and Charles H. Gibbs, Sinkler, Gibbs & Simons, Charleston, S. C., for libellant.

Charles W. Waring, Waring & Brockinton, Charleston, S. C., for libellee.

WILLIAMS, District. Judge.

On October 5, 1955, the libellant, the South Carolina State Highway Department, hereinafter called the Highway Department, filed a libel in this court, alleging that it is a department or agency of the State of South Carolina in whom is vested the function of constructing and maintaining state highways and bridges, and that it is authorized by the statutes of South Carolina to bring the suit for injury and damage occasioned by the collision of the Tank Steamer Fort Fetterman with the westward portion of the drawbridge which spans the Ashley River and connects the City of Charleston with St. Andrews Parish. The libel further alleged that the collision and resulting damages were due to the negligence of the vessel, her master, agents and crew, and that the cost of effecting repairs to the bridge by reason of the collision would amount to not less than $200,000, later amended to $250,000.

Upon the filing of the libel, the Highway Department filed a stipulation for costs and deposited a certified check for ℃250 to take the place of a cash bond. On October 20, 1955, Charles Kurz & Co., Inc., hereinafter called the shipowner, filed a bond, with surety, in the sum of $250,000, reciting that

the vessel involved was in the custody of the marshal under process issued in the cause and that the value thereof had been fixed, by agreement with the proctors for the libellant, to be the sum of $250,000. The bond was conditioned for the payment of the amount that may be awarded by a final decree in the cause. On November 4, 1955, the shipowner filed its answer to the amended libel and also a cross-libel in which it admitted that the libellant is a department or agency of the State of South Carolina, and alleged that the vessel had been damaged in the collision, and that such damage was caused solely by the negligence of the Highway Department, in the sum of $175,000. On November 9, 1955, the Highway Department filed its reply, subject to a special plea to the jurisdiction of the Court as to the cross-libel, denying that the collision was caused by the negligence of the Highway Department, and moved to dismiss the cross-libel because the Highway Department is a department or agency of the State of South Carolina, and the State had not given its consent to be sued in this Court by reason of any alleged damages suffered by the shipowner. On April 2, 1956 this Court by its order denied the motion of the cross-libellant for a dismissal of the cross-libel and overruled the special plea of the Highway Department to this Court's jurisdiction. On April 19, 1956 an appeal was taken from this order by the Highway Department and an appeal bond in the sum of $250 was filed by it, with United States Fidelity and Guaranty Company, as surety, conditioned for the payment of the costs that may be awarded against the appellant if the appeal should not be sustained. The bond was approved as to form and amount and sufficiency of surety by the proctors for the shipowner. On August 8, 1956 the appeal was dismissed upon the ground that it was premature. 4 Cir., 236 F.2d 221. On September 10, 1956 the mandate was issued by the Court of Appeals. On September 12, 1956 the shipowner filed a motion to stay the suit until proper security shall have been given by the Highway Department to respond in the damages set forth in the cross-libel. On September 13, 1956 the Highway Department filed its return alleging that there was no authority, statutory or otherwise, under which the State Highway Department can legally furnish security; that there was no state appropriation or other authorization to provide for the security by the State or any agency thereof; that the furnishing of such security by the State or any agency thereof would amount to an unconstitutional incurring of indebtedness by the State; that the motion of the shipowner came too late and should be denied because of its laches and waiver.

■ A number of interesting legal questions have been raised by counsel for the respective parties but, in view of my conclusion to exercise my discretion in not directing the proceeding to be stayed until a bond is given by the Highway Department, I do not find it necessary to pass upon these questions. I may say, however, that I do not believe that there have been any laches in this matter on the part of the shipowner, inasmuch as the instant motion was made two days after the mandate was sent down by the Court of Appeals, and the Highway Department was not in any way prejudiced or injured because of the failure to make the motion before then. As is said in the case of the United States v. Alex Dussel Iron Works, Inc., 5 Cir., 31 F.2d 535, 536:

"Laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. Its existence depends upon the equities of the case, and not merely upon the lapse of time."

■ Nor do I believe that the fact that the shipowner voluntarily gave bond to secure the payment of any judgment that may be recovered against it would deprive it of the benefits to which it

is entitled under Admiralty Rule 50, 28 U.S.C.A., inasmuch as it was required to give bond to obtain a release of the vessel seized under process of this Court.

As was said by Judge Holtzoff in the case of Mianos Yacht Yard Corporation v. The Blue Cloud, D.C., 114 F.Supp. 930, 931, 932:

"The real purpose of the motion seems to be to avoid compliance with Admiralty Rule 50, 28 U.S.C.A. which requires the libellant to file security to respond in damages sought in the cross-libel under the penalty of a stay of proceedings. This provision applies, however, only if the cross-libellant has previously given security under compulsion to obtain the release of the vessel. *The libellant having exacted such security should not in justice complain if he, in turn, is required to do likewise in respect to the damages claimed in the cross-libel.*" (Emphasis added.)

Admiralty Rule 50 provides:

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs."

In the case of the The City of Beaumont, 4 Cir., 8 F.2d 599, 601, the master of the ship instituted a libel against the cargo owner to recover freight money. The cargo owner, upon the seizure of the cargo, gave a release bond and the cargo was released. The cargo owner then filed a cross-libel against the ship for damages for transportation of the cargo and losses in connection therewith, and obtained an ex parte order directing that the proceeding on the original libel be stayed until and unless security was given by the ship to protect the libellant in the cross-libel. The master of the ship moved the Court to vacate the order staying the original libel proceeding. He averred that the ship was unable to give bond and that its owner was insolvent and could not do so. The District Court then vacated the order staying the original libel proceeding. In affirming the order of the District Court, the Court of Appeals for this Circuit said:

"The purpose of the rule was manifestly to place the parties, the libelant and cross-libelant, on an equality regarding security, as far as the same could be accomplished; but it never meant to do more than could reasonably and lawfully be done to that end, within the discretion of the court, under carefully prepared rules prescribing the rights of the parties litigant and seeking to safeguard and preserve the same. * * *

"The rule never contemplated, as is insisted in the second position stated, that, where the parties to the original libel had established their rights and obtained security, this should be lost to them, because of their inability, arising from insolvency or other good reason, to procure a bond to respond to a large claim asserted in the cross-libel, and that as a result their libel should be dismissed. This would not only be unjust, but would in effect negative and nullify the provision of the rule giving to the trial court full discretion to act upon the very subject involved, and would be entirely contrary to the ruling of the Supreme Court in the recent case hereinbefore cited."

The attorney general of the State of South Carolina submitted a memorandum to this Court stating that it is the State's contention that there is no au-

thority for the State Highway Department to execute such a bond, and in its return, signed by the State's attorney general, the Highway Department alleged that there was no authority, statutory or otherwise, under which the Highway Department can legally furnish security, and that there is no State appropriation or other authorization to provide for the security by the State or any agency thereof.

While I do not feel that I am called upon, at this time, to pass upon the question as to the power of the Highway Department, an agency of the State, to execute the bond in question, nevertheless, I am of the opinion that the question raised is of such substantial character that I would not be warranted in requiring any state agency to assume the responsibility of executing such bond, in the light of the opinion of the State's attorney general that there was no authority for such execution. Furthermore, because of the opinion expressed by the attorney general, it would, in all probability, be difficult, if not impossible, to get a surety company to execute such bond because such surety company would then, in my opinion, become liable under the bond even though it may not be enforceable against the Highway Department or the State of South Carolina because of the lack of authority of its agents to execute such bond.

In 50 American Jurisprudence, page 999, it is stated:

"Incapacity of Principal to Contract.—As an exception to the rule that the surety may plead any defense available to the principal, it is in general held that the surety may not avail himself of a defense which is purely personal to the principal, as, for example, the personal incapacity of the principal."

See also 24 A.L.R., page 839, wherein the author states:

"The courts are agreed that where there is no fraud, duress, deceit, or violation of law in procuring the contract, the surety or guarantor of a principal who is incapable of contracting is bound, although the principal is not."

The author cites a number of authorities in support of that statement, including the case of Smyley v. Head, decided by the South Carolina Supreme Court, and reported in 2 Rich. 590.

In the light of the foregoing, I am of the opinion that this is a proper cause for the exercise of discretion by the Court not to require the giving of a bond by the Highway Department.

The shipowner called the Court's attention to the fact that the giving of security for costs is a condition precedent to pursuing a remedy in the Court of Admiralty, and that the Highway Department considered that it had authority so to do when it furnished security for costs and posted a stipulation to guarantee the payment thereof. However, as pointed out above, the stipulation for costs was accompanied by a certified check to take the place of a cash bond. As is said by the Supreme Court in the case of Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L.Ed. 1008:

"The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the Bank. It is available also to him for all the purposes of money."

I am inclined to the view that, in any event, the shipowner will not suffer any injury because of the failure of the Highway Department, an agency of the State, to give such bond. The State of South Carolina will, no doubt, carry out its obligation and provide for the payment of any judgment that may be awarded against it in this proceeding. It is inconceivable that the State, through its agency and its attorney general would come into Court and seek justice therein, and that it would refuse to do justice and to comply with the judg-

ment of this Court if it should adjudge that the State sustained no damage as a result of the negligence of the shipowner, but that the shipowner suffered damage as a result of the negligence of the State's agency. It is therefore

Ordered that the motion to stay proceedings herein until a bond is given by the cross-respondent be and hereby is denied.