Perrin L. CUDWORTH et al.,
Libellants,

v.

Panamanian Motorship THE ST. CUTH-
BERT, etc., Respondents.

No. 7760.

United States District Court
E. D. Virginia, Norfolk Division.
Jan. 3, 1957.

Jett, Sykes & Howell, Norfolk, Va.,
Roy L. Sykes, Norfolk, Va., for libellants.

Baird, White & Lanning, Norfolk, Va.,
Guilford D. Ware, Norfolk, Va., for respondents.

HOFFMAN, District Judge.

This is an action in admiralty by the master and members of the crew of a tug against the Panamanian motorship St. Cuthbert, in rem, and its owner, in personam, asserting salvage claims alleged to have been occasioned by a fire at the dock of the West India Fruit and Steamship Company, Norfolk, Virginia, where the vessel was moored. Libellants assert that, by reason of their prompt action, the vessel and its valuable cargo of bananas were saved. Libellants were attending a meeting at a local hotel when they noted the fire and went to the scene. Respondents posted security in the sum of $15,000 to respond in damages.

The owner of the St. Cuthbert filed a cross-libel in personam alleging that libellants, while operating a tug in assisting the St. Cuthbert to a safer location, negligently pulled the vessel into shallow water, causing her to come in contact with the piling on the opposite side of the slip and to run aground. The cross-libel alleges damages in the sum of $25,000 and demands security under General Admiralty Rule 50, 28 U.S.C., or, in default thereof, that the proceedings be stayed until security be given.

Libellants have filed exceptions to the cross-libel denying that they should be

required to post bond as security for the cross-libel, and further alleging that the cross-libel is not a proper matter for consideration herein as it contains extraneous matter from that contained in the original libel. Libellants concede, however, that an independent libel could be maintained, and that the Court, in its discretion, could consolidate the matters for hearing.

General Admiralty Rule 50 (formerly Rule 53 and originally Rule 54) provides:

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs."

The present action is instituted by seamen pursuant to the provisions of 28 U.S.C. § 1916, permitting this class of persons to institute and prosecute suits and appeals for wages or *salvage* or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor. Justice Brandeis in Washington-Southern Navigation Company v. Baltimore & Philadelphia Steamboat Company, 263 U.S. 629, 44 S.Ct. 220, 221, 68 L.Ed. 480, 1924 A.M.C. 370, appears to have predicted that this question would arise when, in construing Rule 50, he said:

"The construction given to rule 50 by the District Court would, by imposing an impossible or onerous condition, deprive many litigants of the right to prosecute their claims in admiralty. Among others, it would, if applied, generally, deny this right to seamen, upon whom, re-gardless of their means or nationality, Congress, shortly before the adoption of rule 50, had conferred the right to prosecute their claims, in both trial and appellate courts, without giving security even for costs. * * * Obviously, it was not the intention of this court in adopting the rule to disregard the right of seamen, of poor persons or of others to prosecute suits in admiralty."

It is difficult to conceive of many salvage claims not prosecuted by a seaman unless it involves the raising of a vessel. Realizing as we must that seamen would be unable to post security on any cross-libel filed, it is rather apparent that the Supreme Court had this in mind when it inserted the exception in Rule 50, "unless the court for cause shown, shall otherwise direct". To hold otherwise, salvage claims instituted by seamen could be effectively foreclosed. The request that libellants be required to post security to respond in damages to the matters as stated in the cross-libel, as well as the motion to stay proceedings until security is given, is denied. See also The City of Beaumont, 4 Cir., 8 F.2d 599.

Whether the cross-libel is properly maintainable as "arising out of the same contract or cause of action for which the original libel was filed" presents a more difficult question. Undoubtedly, the assertions in the cross-libel, if proved, may constitute a defense to the original libel. Equally apparent is the fact that respondents may institute a separate libel proceeding which would immediately be consolidated with the present action for the purposes of trial. In Southwestern Transportation Co. v. Pittsburg Coal Co., D.C.E.D.La., 42 F. 920, the court rejected the respondent's right to proceed under a cross-libel, but it is noted that the allegations of the cross-libel caused all necessity for the salvage, whereas, in the instant case, it is contended that the salvage was made necessary by the fire and the tort alleged against libellants occurred during the efforts of the seamen in salvaging the

vessel and its cargo. The property saved and the property damaged in the present case were identical.

It is the conclusion of this Court that the cross-libel is properly maintainable in the present action. As was said in Partenreederei Wallschiff v. The Pioneer, D.C., 120 F.Supp. 525, 528:

"If this type of cross-libel, which the instant case involves, be unorthodox, the court fails to discern any reason why it should not be permitted; the parties are the same; the claims asserted in the cross-libel arose out of the same cause of action for which the original libel was filed; the cross-libelant could resort to the same relief in an independent action in the same jurisdiction; it could do so by filing the original libel instead of requesting it in a cross-libel; it appears logical that the entire controversy should be disposed of in one action, without multiplicity of suits."

While not in point by reason of the construction of the 56th Admiralty Rule, the language of Judge Dobie in British Transport Commission v. United States, 4 Cir., 230 F.2d 139, 145, appears appropriate wherein it is said:

"Modern codes of procedure have reflected two facets: (1) all rights, if this can fairly be done, should be decided in a single legal proceeding; (2) parties who submit themselves to the jurisdiction of a court in a legal proceeding should be bound by that court's decision on all questions, appropriate to and seasonably raised in, that proceeding."

The trend appears to place a broad interpretation upon the words "same cause of action" and follows the principle enunciated in Vianello v. The Credit Lyonnais, D.C., 15 F. 637, 638. The words are used in a more general sense, meaning the same transaction, dispute or subject matter. United Transp. & L. Co. v. New York & Baltimore Transp. Line, 2 Cir., 185 F. 386; Genthner v. Wiley, D.C., 85 F. 797. While this Court is of the opinion that Southwestern Transp. Co. v. Pittsburg Coal Co., supra, is distinguishable on the facts, it would no longer appear to be the law if the facts are the same as in the instant case.

An order in accordance with this memorandum will be entered upon presentation.