Bertram E. SPRIGGS, Claimant of THE Motor Boat VALJEAN and Respondent and Cross-Libellant, Appellant,

v.

John G. HOFFSTOT, Jr., Libellant and Cross-Respondent, Appellee.

No. 7291.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 7, 1956.

Decided Jan. 7, 1957.

George W. P. Whip, Baltimore, Md., (Lord, Whip & Coughlan, and Robert E. Coughlan, Jr., Baltimore, Md., on brief), for appellant.

Henry A. Wise, Jr., Wilmington, Del., (Doris P. Scott, Elkton, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

This appeal raises a question as to the proper application of Admiralty Rule 50, 28 U.S.C.A. Stated generally, the rule pertains to the furnishing of security by a libellant, when he or his ship has been made the subject of a cross libel upon a counterclaim.

In the record before us the fact situation is somewhat different from the conventional case of libel and cross-libel. The Valjean, owned and operated by Bertram E. Spriggs, collided near Annapolis Harbor with the Misty, owned and operated by John G. Hoffstot, Jr. The Misty sank and was later salvaged, and the wreck has a stipulated value of $700.

The owner of the Misty, Hoffstot, Jr., filed libels *in rem* and *in personam* against the Valjean and its owner, Spriggs, to recover damages for the resulting loss of the Misty and other property. The Valjean was seized, and released to its owner upon his posting a bond of security in the amount of $50,-000; but this was later reduced by stipulation to $25,000.

At the time of the collision, John G. Hoffstot, Sr., father of the Misty's owner, was on the boat, and he later likewise filed separate libels *in rem* and *in personam* against the Valjean and its owner, claiming $300,000 in damages. Thereupon, Spriggs filed a cross-libel in the original suit, seeking indemnity or contribution from the younger Hoffstot in the event that the father should recover a verdict. Spriggs obtained an ex parte order for a stay of the original suit of the son until security should be posted. The order is as follows:

"Ordered that the original libel filed herein by John G. Hoffstot, Jr., be and the same is hereby stayed until the said John G. Hoffstot, Jr., libellant-cross-respondent, furnishes proper security pursuant to general admiralty rule 50 as prayed in said cross-libel or until said libellant-cross-respondent show cause why said security should not be furnished."

Although no cause was shown against the stay, as provided in the Court's order, two motions were filed by the younger Hoffstot. One sought to vacate the staying order "for the reason that there is no good cause why libellant-cross-respondent should be required to post security." The other sought dismissal of the cross-libel for the reason that it "is not proper subject matter for a cross-libel, and cross-libellant, if entitled to any relief, can obtain full relief pursuant to rule 56 of the Admiralty Rules of the Supreme Court of the United States by impleading your cross-respondent."

The District Judge granted the first motion, to vacate the ex parte stay order, and the motion to dismiss the cross-libel he denied without prejudice. He ex-

pressed doubt as to the propriety of Spriggs' use of a cross-libel against the son merely because the father had sued Spriggs in a separate suit, but the Judge left the question open for mature consideration in the light of the issues as they may be more fully developed at the trial. As this point was reserved for future decision, it is not properly before us on this appeal. In explaining his reasons for vacating the stay order, the District Judge expressed the view that rule 50 did not apply to the situation here presented. The rule reads as follows:

"Security on cross-libel. Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs."

While there is some division among the authorities as to whether or not it is permissible in any event to invoke the rule where the original libel is *in rem* and the cross-libel is *in personam*, the Court accepted the view that the rule may apply to such a situation. It is not clear, however, that this is a case of a libel and cross-libel filed upon a counterclaim "arising out of the same contract or cause of action for which the original libel was filed," because the counterclaim is for reimbursement for one half of the money the cross-libellant may be called upon to pay, if both vessels should be adjudged liable to the elder Hoffstot. There is authority for saying that rule 50 does not comprehend such a situation. The Grecian, D.C.D.Mass., 36 F.2d 833. Without finding it necessary to decide this point, the Court took the view that, even if the case falls within rule 50, its

provisions are not mandatory, but the application of the rule is left to the discretion of the Judge. In this circuit, Judge Soper, when District Judge, refused a stay order, treating the provisions of the rule as investing him with a discretion; and he was affirmed in City of Beaumont, 4 Cir., 8 F.2d 599. In that instance, the inability of the crossrespondent to furnish bond or security because of insolvency was the reason accepted by the Court for not insisting on security; but other good reasons might exist. Indeed the requirement of rule 50 for the respondent in the cross-libel to give security embodies the qualification, "unless the court for cause shown, shall otherwise direct." What significance shall be ascribed to this language? It seems to us to refer the matter to the sound judgment of the Court, according to the circumstances of the case, and not inflexibly to require security from the cross-respondent in all cases.

We therefore reach the question whether in the particular circumstances the District Judge committed an abuse of discretion in not requiring security from the son to protect Spriggs to the extent of one half of any possible recovery by the father. There is some obscurity as to the meaning of the rule when it speaks of requiring security "in the usual amount." The appellant interprets it to mean that although he furnished bond in the amount of $25,000, he may now insist upon his adversary, the younger Hoffstot, furnishing bond in the amount of $150,000 because the father is suing for $300,000, and the penalty for failure to furnish such bond is that trial of the original libel is stayed. The effect would be to require Hoffstot, Jr., to give bond for many times his claim, or abandon the suit.

The $25,000 bond was given to take the place of the seized Valjean, which was worth not more than that sum. As we view appellant's case, it seems to come to this: had he seized appellee's boat, The Misty, appellant could have required a bond in the amount of its value—not over $700 after the collision; yet be-

cause the Misty was not seized or released, appellant claims to be entitled to security for the full amount of his claim—$150,000. In The Gloria, D.C. S.D.N.Y., 267 F. 929, 931, Judge Learned Hand held that the respondent in a cross-libel should give the same "security which he would have had to give, had the cross-libelant been able to arrest the ship." Here the cross-libel was not *in rem,* but *in personam,* and if we assume the applicability of rule 50, we still have the question of the amount of the bond the cross-respondent shall be required to furnish.

The Supreme Court has said: "Here, as in England, the purpose of the provision was declared to be to place the parties on an equality as regards security." Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamship Co., 263 U.S. 629, 638–639, 44 S.Ct. 220, 223, 68 L.Ed. 480. How is equality to be achieved? We think the question must be referred to the context of the case, and it is undesirable to attempt to formulate a universal rule. The case now before us illustrates the inappropriateness of a mechanical formula. The rule seeks to avoid confining the practice within a straight jacket by empowering the Court to "otherwise direct," either as to requiring a bond or as to a stay of proceedings for failure to give bond.

In the present instance, will equality be attained by requiring bond for the full claim of the cross-libellant? Or is it more equitable and just to say to the cross-respondent, "Since you demanded and received bond for $25,000, you will be required to give the cross-libellant security in an equal amount"? The latter would seem to us to be a nearer approximation of equality; but even bond in that amount may not in all circumstances fairly be demanded. When the rule gives the cross-libellant a right to "security in the usual amount," his bond need not necessarily be in the exact amount of the original libellant's bond; nor is it necessarily in the amount of the cross-claim, because as in the original libellant's case (See Admiralty Rule 12),

so in the cross-libellant's case the amount is subject to the exercise of the judge's discretion. In arguing that the words "usual amount" mean the amount claimed in the cross-libel, appellant cites cases where the security required by the court did, in fact, equal the amount of the claim. Such cases, however, do not indicate that this is required by the rule; they merely serve as particular examples of the exercise of the Court's discretion, and do not indicate that the discretion may not be exercised in a different manner. The equality the Supreme Court finds in the rule is equality of treatment, according to the circumstances, by making the benefits of the rule equally available to the libellant and cross-libellant, giving to each security fairly, according to the circumstances. Equality of treatment does not result always in equality of amount.

The purpose of the bond is to supply reasonable protection. In the case of the original respondent's bond, it was to substitute for the boat; in this instance, it does not take the place of any security that the cross-libellant has relinquished. Even if a bond would normally be demandable, it may, as we have seen, be excused if the Court finds it unreasonable to require it, as when the requirement cannot be met because of the respondent's financial condition, and insistence would result in an automatic stay, denying him a day in court on his claim. The Court can then in its discretion "otherwise direct." City of Beaumont, supra.

Here the Court's refusal to require security was based on a sound reason. As the separate suits of the two Hoffstots against Spriggs have been consolidated for trial, all parties will be before the Court. As Judge Chesnut pointed out, he can then pass such orders as may seem just to protect Spriggs against the exaction of payment beyond his share of liability upon any judgment the father may recover for the joint fault of his son and Spriggs. The Judge can prevent young Hoffstot's pocketing his recovery against Spriggs without

bearing his share of liability to the senior Hoffstot. This can be done without impeding the trial of young Hoffstot's case or that of his father. No bond is required to make available for the protection of Spriggs the sum young Hoffstot may recover. No bond for more than this should in reason be required of him.

Laying aside all other questions as unnecessary to the disposition of this case, we hold that even if rule 50 applies to this type of case, the rule allows the District Court a discretion whether or not to require bond from the cross-respondent; City of Beaumont, supra; Partenreederei Wallschiff v. The Pioneer, D.C., 120 F.Supp. 525, 529, 530; and if bond is required, to fix the amount, not necessarily related to the amount of bond theretofore furnished by the original respondent and not necessarily in a sum sufficient to cover the claim of the cross-libel, but in an amount just and reasonable under all the circumstances. We find here no abuse of discretion, and the order appealed from will be

Affirmed.