**TITAN NAVIGATION, INC., et al.,
Plaintiffs-Appellees,**

**v.**

**TIMSCO, INC., et al., Defendants,**

**Marine Leasing, Inc. and RHC Industries, Inc., Defendants-Appellants.**

**In re MARINE LEASING,
INC., Petitioner.**

**Nos. 85–2877, 85–2886.**

United States Court of Appeals,
Fifth Circuit.

Jan. 13, 1987.

W. McNab Miller, III, Parks, Tradd, Mulder & Miller, Porter & Clements, Mark K. Glasser, Houston, Tex., for defendants-appellants.

Thomas Dean Hamblin, Kevin H. George, Houston, Tex., for Titan Navigation, et al.

Before REAVLEY and POLITZ, Circuit Judges, and ROBINSON,* District Judge:

POLITZ, Circuit Judge:

This appeal involves the interpretation and application of Rule E(7) of the Supplemental Rules for Admiralty, in an instance in which a complainant possessed of a maritime lien secured the posting of security and, in turn, was ordered to post countersecurity for the defendant's counterclaim. For the reasons assigned, and with the caveats noted, we affirm.

*Background*

In late 1982 Timsco, Inc. contracted to furnish computer hardware and software for vessels owned by Titan Navigation, Inc. Titan preferred not to purchase the systems outright, but opted to enter into a lease agreement with Marine Leasing, Inc., a corporation organized for the specific purpose of purchasing the systems and leasing them to vessels.

In July 1984, Titan and related corporations sued Timsco and Marine Leasing for recission of the contract and damages, contending that the computers were faulty. Timsco and Marine Leasing counterclaimed, seeking enforcement of the contract. Exercising its maritime lien rights, Marine Leasing arrested, or initiated an action to arrest, vessels belonging to Titan.[1] Titan secured the release of these vessels by posting the requisite security. Thereafter, Titan and its vessels counterclaimed, ultimately alleging breach of contract, misrepresentation, violation of the

---

* District Judge for the Northern District of Texas, sitting by designation.

1. Subsequently, RHC Enterprises, Inc. intervened, alleging an interest in Marine Leasing's claim against Titan. We refer only to Marine Leasing.

Texas Deceptive Trade Practices Act, breach of warranty, breach of indemnity, and violations of the Texas Uniform Commercial Code. Titan also requested that Timsco and Marine Leasing be ordered to post countersecurity under Rule E(7) of the Supplemental Rules for Admiralty.

The trial court ordered Timsco and Marine Leasing to either post countersecurity or release the security given in lieu of the arrest of Titan's vessels. Marine Leasing appealed and presented issues not brought to the attention of the district court. We remanded for reconsideration. After further discovery and proceedings, the district court again ordered the posting of countersecurity. Marine Leasing noticed the present appeal.

### Analysis

■ At the threshold we confirm appellate jurisdiction. Under our holding in *Incas and Monterey Printing and Packaging, Ltd. v. M/V SANG JIN*, 747 F.2d 958 (5th Cir.1984), the countersecurity order is appealable. We address the merits of appellant's claims.

This appeal turns on the language of Rule E(7), in light of its historical development. The pertinent language of this section is straightforward:

(7) Security on Counterclaim. Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond

in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct; ...

■ Marine Leasing first contends that the countersecurity provisions of the rule apply only to counterclaims in admiralty. In that regard it points out that Titan's counterclaim invokes only diversity and federal question jurisdiction. In support of this contention appellant relies on *United States v. Isthmian Steamship Co.*, 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959). We find that reliance misplaced. *Isthmian* simply holds that the cross-libel referred to in Admirality Rule 50 (the predecessor to Rule E(7)), included only those claims which related to the original libel. In the case at bar, all of the claims arise out of the same transaction and are at least within the pendent jurisdiction of the district court sitting in admiralty. In this resolution we are guided, as was the district court, by the scholarly opinion of Judge Friendly in *Leather's Best, Inc. v. S.S. MORMACLYNX*, 451 F.2d 800 (2d Cir. 1971). Titan was entitled to invoke the countersecurity provision of Rule E(7) despite the fact that the counterclaim was not based in admiralty.

The more serious and difficult question posed by this appeal involves the ordering of the posting of countersecurity by one who possesses and has exercised an admiralty lien. The answer to that question requires a brief review of the historicity of this provision.

The concept of countersecurity is found in the first promulgation of rules in American admiralty courts, and it has continued to date with little substantive change.[2]

---

**2.** The first countersecurity rule in admiralty was Admiralty Rule 54, adopted at 7 Wall. v (1868), which provided:

Whenever a cross-libel is filed upon any counter claim arising out of the same cause of action for which the original libel was filed, the respondents in the cross-libel shall give security in the usual amount and form, to respond in damages as claimed in said cross-libel, unless the court on cause shown, shall otherwise direct; and all proceedings upon the original libel shall be stayed until such security shall be given.

The same rule was re-adopted as Admiralty Rule 53 at 210 U.S. 562 (1907). In 1920 the provision became Admiralty Rule 50, 254 U.S. at 24 (Appendix), providing:

Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to

With the merger of law and admiralty in 1966, admiralty's classic and ancient phraseology of libels and cross-libels was replaced with the more mundane terminology of claims and counterclaims, but Rule E(7) retained the essence of Admiralty Rule 50. *See* Advisory Committee's Note, Proposed Supplemental Rules for Certain Admiralty and Maritime Claims, *reprinted in* 39 F.R.D. 146, 160 (1966).

The rule is straightforward. When the defendant posts security to guarantee payment of an adverse judgment—typically the posting of a bond to secure release of a vessel—the complainant may be required to furnish security for the satisfaction of a counterclaim. Although the language of the rule is automatic it is not absolute, for the original seizing complainant may be excused by the court "for cause shown." Absent this relief by the court, the intent of the rule is manifest; it is "to place the parties on an equality as regards security." *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 638–39, 44 S.Ct. 220, 223–24, 68 L.Ed. 480 (1924).[3]

■ The determination of "for cause shown" is relegated to the sound discretion of the district court. The extent of that discretion is critical to the resolution of this and similar appeals. We are persuaded that the discretion, although broad, is significantly cabined in some cases.

A survey of the jurisprudence reflects instances in which demands for countersecurity were carefully weighed and charily granted. Courts have recognized that seamen should not be forced to post countersecurity when they act to enforce their privileged position. *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.; Zubrod v. Associated Metals & Minerals Trade Co.,* 243

F.Supp. 340 (E.D.Pa.1965); *Cudworth v. The St. Cuthbert,* 146 F.Supp. 857, 858 (E.D.Va.1957) (action by seamen on salvage liens, holding seamen not required to post countersecurity because "to hold otherwise, salvage claims instituted by seamen could be effectively foreclosed.") The rationale for excusing seamen from posting security comes from their traditional role as wards of the court and the fact that Congress has long permitted them to prosecute civil actions without posting security. 28 U.S.C. § 1916.

Similarly, when a party is financially unable to post countersecurity, courts often dispense with the requirement of the rule, although the cases are not unanimous. The leading case on this point, with which we agree, remains *The Beaumont,* 8 F.2d 599 (4th Cir.1925):

The rule never contemplated, ... that, where the parties to the original libel had established their rights and obtained security, this should be lost to them, because of their inability, arising from insolvency or other good reason, to procure a bond to respond to a large claim asserted in the cross-libel, and that as a result their libel should be dismissed. This would not only be unjust, but would in effect negative and nullify the provision of the rule giving to the trial court full discretion to act upon the very subject involved.

8 F.2d at 601. *See also Spriggs v. Hoffstot,* 240 F.2d 76 (4th Cir.1957) (finding no abuse of discretion in trial court's decision not to require countersecurity); *Whitney-Fidalgo Seafoods v. Miss Tammy,* 542 F.Supp. 1302 (W.D.Wash.1982) (refusing counterclaimant's argument that the defendant on the counterclaim might be unable to pay a judgment and should there-

---

the claims set forth in said cross-libel, unless the court, for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs.

**3.** *See, e.g., Seaboard & Caribbean Transp. Corp. v. Hafen-Dampfschiffahrt A.G.,* 329 F.2d 538 (5th Cir.1964); *Spriggs v. Hoffstot,* 240 F.2d 76

(4th Cir.1957); *Expert Diesel, Inc. v. Yacht "Fish-in Fool",* 627 F.Supp. 432 (S.D.Fla.1986); *Willamette Transp., Inc. v. Cia. Anonima Venezolana de Navegacion,* 491 F.Supp. 442 (E.D.La. 1980); *Empresa Maritima a Vapor v. North & South American Steam Nav. Co.,* 16 F. 502 (S.D. N.Y.1883).

fore be required to post security); *cf. Flota Maritima Browning de Cuba v. M/V Ciudad de la Habana,* 245 F.Supp. 205 (D.Md. 1965); *Geotas Compania de Vapores v. S.S. Arie H.,* 237 F.Supp. 908 (E.D.Pa.1964) (considering financial statements of cross libellant, requiring reduced countersecurity). We have recognized the pertinency of this consideration by concluding that financial difficulties would not automatically excuse the countersecurity requirement. *Seaboard & Caribbean Transp. Corp. v. Hafen-Dampfschiffahrt,* 329 F.2d 538 (5th Cir.1964).

■ Finally, the court should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant.

■ In summary, we conclude that the exercise of the trial court's discretion to order countersecurity is to be guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection.

We believe the guidon for this analysis is the court's obligation to preserve the integrity of maritime liens. These vintage security devices endure and are protected because of their commercial usefulness. Despite the advent of instant communications, and the availability of sophisticated international financing, the ability of a ship's master to bind his vessel *in rem* continues to facilitate the prompt supply of goods and services. Similarly, liens under the law of general average permit the ship's master to make expeditious decisions regarding imperiled cargo; salvage liens encourage sailors to save property which would otherwise be lost; and liens arising out of collisions and other torts give innocent parties a source of financial responsibility, even though ultimate responsibility may lie with a distant and unreachable individual or corporation.

The considerable deference to be given maritime liens where countersecurity is requested was explained by Mr. Justice Brandeis in *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* where he discussed at length the history of Rule 50 and its predecessors, and rejected a rigid construction under which "a libellant may be automatically barred from prosecuting his suit, merely because he is unable or unwilling to give security to satisfy the claim made in the cross-libel." 263 U.S. at 632, 44 S.Ct. at 221. Justice Brandeis reasoned that such a rigid construction of the rule would impair the rights of litigants to proceed in admiralty and would result in wasteful machinations on the part of litigants, concluding:

An intention to introduce a practice so capricious is not to be lightly imputed.

To ascertain the true meaning of the rule, it must be read, also, in the light of the established admiralty jurisdiction, of the general principles of maritime law, and of the appropriate function of rules of court.

263 U.S. at 632, 44 S.Ct. at 221.

\* \* \* \* \* \*

The construction given to Rule 50 by the district court would, by imposing an impossible or onerous condition, deprive many litigants of the right to prosecute their claims in admiralty. Among others, it would, if applied generally, deny this right to seamen, upon whom, regardless of their means or nationality, Congress, shortly before the adoption of Rule 50, had conferred the right to prosecute their claims, in both trial and appellate courts, without giving security even for costs. It would likewise deny to poor citizens of the United States the right to proceed in admiralty.... Obviously, it was not the intention of this Court, in adopting the rule, to disregard the right

of seamen, of poor persons or of others to prosecute suits in admiralty.[4]

263 U.S. at 634–35, 44 S.Ct. at 221–22 (citations omitted).

■ Justice Brandeis's blazings guide today's interpretation and application of Rule E(7). We can readily contemplate instances when permitting one party to enjoy security without requiring countersecurity could result in injustice. For example, when no maritime lien or statutory right is involved, as in an action commenced *quasi in rem* under Rule B, there usually would be little or no reason to permit a complainant to enjoy unilateral security rights, absent strong justification—or in the terms of Rule E(7), "cause shown." On the other hand, the court should not lightly order countersecurity if to do so would diminish the utility of the maritime liens established by Congress [5] or long-standing precedents. The circumstances of each case must govern the propriety of the ordering of countersecurity.[6]

It is against this backdrop that we examine the propriety of the countersecurity order in the case at bar.

■ In its analysis the trial court questioned whether Marine Leasing would be able to post the countersecurity. If it failed to do so it would lose the advantage of the security posted by Titan for release of the arrested vessels. Should this materialize, the effect of the trial court's order would be to force a lien-holder to relinquish a privileged position because of a financial inability to post countersecurity.

The trial court was persuaded that in the event the failure to post the countersecurity caused Marine Leasing to forfeit its secured position, its rights would be adequately protected by its *in personam* action against Titan. Implicit in this is a finding that Titan could respond in dam-ages should it be cast in judgment. While we are reluctant to approve an *in personam* remedy as a substitute for a lien against a *res in custodia legis*, we cannot conclude that in this specific instance the district court abused its discretion.

We conclude that the ordering of countersecurity, under the particular facts presented, does no substantial harm to the sanctity or efficacy of maritime liens. In this case, the contract which gave rise to the lien was the result of careful negotiation between officials of the corporate parties. There is no indication whatsoever that Marine Leasing relied on the credit of any of the seized vessels in deciding to enter into the mesne contract between Timsco and Titan. We thus perceive no impairment of the fundamental utility of maritime liens, *i.e.*, as an inducer of credit for a ship's needed goods and services. Therefore, although we are loathe to approve what may develop to be a discharge of a maritime lien because of the lienholder's financial limitations, under the specific and narrowly defined facts of this particular case, we are not prepared to say that the trial court abused its discretion in ordering countersecurity.

The order requiring the posting of countersecurity is AFFIRMED.

---

**4.** Significantly, Justice Brandeis spoke for a unanimous court shortly after its promulgation of Admiralty Rule 50. Although at that time Rule 50 could result in dismissal of the libellant's *only* right of action, while modern litigants may proceed against a defendant *in personam*, countersecurity requirements may still work a hardship on parties, and the argument retains its force. *See* Pelaez, *Security on Admiralty Counterclaims a Search for Solutions*, 17 Duq.L.Rev. at 247, 268–69 (1978–79).

**5.** *See, e.g.*, 46 U.S.C. §§ 953, 971.

**6.** An excellent discussion is found in Judge Roettger's opinion in *Expert Diesel, Inc. v. Yacht "Fishin Fool,"* 627 F.Supp. 432 (S.D.Fla.1986).