**DONGBU EXPRESS CO.,
LTD., Plaintiff,**

v.

**NAVIOS CORPORATION, Defendant.**

No. 96 Civ. 4765 (SAS).

United States District Court,
S.D. New York.

Sept. 24, 1996.

Michael O. Hardison, Snow Becker Krauss P.C., New York City, for Plaintiff.

John W. Wall, Matthew A. Marion, Healy & Baillie, New York City, for Defendant.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge.

Defendant Navios Corporation ("Navios") moves, pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims, for partial release of the maritime attachment and garnishment of its bank account issued against it by this Court

---

1. The parties are also disputing time charters for the vessels LUCKY BULKER and SCENERY SEA, but neither dispute is at issue here. *See* Plaintiff's Memorandum at 8.

on June 24, 1996 and, pursuant to Rule E(7), for countersecurity.

## BACKGROUND

Plaintiff Dongbu Express Co. ("Dongbu") is a Korean shipping corporation. On May 17, 1995, Dongbu, as charterer, entered into a time charter agreement with Navios, as owner. Pursuant to the agreement, Dongbu agreed to time charter the vessel MASS WITS from Navios for a minimum period beginning on May 9, 1995 and terminating August 12, 1996, and a maximum period terminating October 12, 1996. *See* Points of Claim, annexed as an Exhibit to Affidavit of Charles G. Weller, London Attorney for Navios, dated July 12, 1996. On May 3, 1996, the time charter agreement was terminated prematurely. The parties disagree as to who breached the agreement and are presently arbitrating the dispute in London pursuant to the charter's arbitration clause.[1]

On May 29, 1996, Navios filed an action in the District of Connecticut seeking a Rule B maritime attachment of Navios' accounts payable to Dongbu (and the accounts payable of Navios International, Inc., a related company) to secure claims against Dongbu in the London arbitration of the MASS WITS and the LUCKY BULKER disputes. The attachment was ordered on June 7, 1996. *See* Reply Affidavit of John W. Wall, Attorney for Navios, dated July 12, 1996, Ex. C.

Dongbu commenced the present action to obtain security in the amount of $824,908 for the London arbitration of the MASS WITS dispute.[2] On June 24, 1996, this Court issued an order directing the clerk to issue the attachment, and Navios' account at Chase Manhattan Bank, N.A. was subsequently garnished. On June 28, 1996, Navios counterclaimed and applied for an order directing Dongbu to post bond in the amount of $439,394 as security for Navios' claims in the MASS WITS dispute. This amount was subsequently reduced to $353,542 because Nav-

---

2. This amount was based on the estimate of damages contained in Dongbu's original complaint. Dongbu has subsequently amended its complaint to reflect damages totaling $1,249,665.03. *See* Amended Verified Complaint in Admiralty at ¶ 9.

ios now believes it will be able to mitigate a portion of its damages. *See* Reply Affidavit of Paul L. Hedger, Vice President of Operations of Navios Corporation ("Hedger Reply Aff."), dated July 12, 1996, at ¶¶ 2–7.

On July 5, 1996, Dongbu commenced a second action against Navios, this time in South Korea, and attached accounts payable to Navios from Keoyang Shipping Co. Ltd. in the amount of $854,300 to secure claims for damages in the LUCKY BULKER, MASS WITS, and SCENERY SEA disputes. *See* Letter from Kim, Shin & Yu, Navios' Korean counsel, dated July 10, 1996, annexed as Ex. A to Hedger Reply Aff.

Navios now moves for a partial release of the New York attachment. In addition, Navios moves for countersecurity for its counterclaims, arguing that because the Connecticut action did not provide sufficient security to fully cover its LUCKY BULKER and MASS WITS claims, Navios may allocate the entire Connecticut attachment to LUCKY BULKER and seek new security for MASS WITS in New York. *See* Letter from Matthew A. Marion, Attorney for Defendant ("Marion Letter"), dated August 5, 1996, at 2.

**DISCUSSION**

I. *Motion for Partial Release of Attachment*

Motions for reducing attachments are common in admiralty law. Because pre-judgment attachments are usually based upon reasonable estimates and not precise facts, parties often attach amounts which are later deemed excessive in light of changes in circumstance. *See* 7A James W. Moore et al., *Moore's Federal Practice* ¶ E14 (2d ed. 1996). As a result, a reduction in security is "freely granted upon a showing that the [attach-

ment] is excessive." *Id.* Indeed, the Supplemental Rules for Certain Admiralty and Maritime Claims and the Southern District's Local Admiralty Rules explicitly provide for hearings and motions regarding such reductions.[3]

Navios asserts two arguments in support of its request to reduce the New York attachment. First, Navios challenges the merits of two of Dongbu's claims and Dongbu's calculation of interest and costs. Second, Navios argues that Dongbu has obtained duplicative security for the MASS WITS dispute in Korea and is therefore oversecured. These arguments raise different issues and will be addressed separately.

A. *Dongbu's claims*

■ It is well-settled that in an attachment proceeding, the plaintiff need not prove its damages with exactitude. *See, e.g., Bergesen v. Lindholm*, 760 F.Supp. 976, 986 (D.Conn.1991). But the court must be satisfied that the plaintiff's claims are not frivolous. *See Royal Swan Navigation Co., Ltd. v. Global Container Lines, Ltd.*, 868 F.Supp. 599 (S.D.N.Y.1994); *Rolls Royce Industrial Power v. M.V. Fratzis M.*, 1995 WL 846690, at *3 (S.D.N.Y. July 24, 1995).

Dongbu claims the following damages in the London arbitration of the MASS WITS dispute:

| | |
|---|---|
| Return of hire and value of bunkers onboard | $ 286,720 |
| Off-hire | $ 127,698 |
| Indemnity claim for liability to sub-charterers (NSAC) | $ 121,375 |
| Return of Far East redelivery bonus | $ 350,000 |
| Principal Sum | $ 885,793 |
| Interest at 9.25% for 2 years | $ 163,872 |
| Costs | $ 200,000 |
| TOTAL | $1,249,665 |

---

**3.** Rule E(4)(f) of The Supplemental Rules provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Rule E(6) elaborates:

> Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given. . . .

Rule 12 of the Local Admiralty Rules provides:
> Where property is arrested or attached, any person claiming an interest in the property arrested or attached, may upon a showing of any improper practice or a manifest want of equity on the part of the plaintiff to [sic] be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted consistent with these rules or the Supplemental Rules.

Affidavit of Michael O. Hardison, Attorney for Dongbu, in Opposition to Defendant's Motion for Counter Security and to Partially Reduce Attachment ("Hardison Aff."), dated July 26, 1996, at ¶ 9.

■ Navios argues that the claims for the liability to subcharterers and the redelivery bonus are meritless because they are fully offset by Dongbu's savings of the costs of hire for the remainder of the charter. *See* Marion Letter at 3. Because Dongbu's claims are offset by savings does not prove that they are frivolous. It merely demonstrates that Dongbu may not be able to recover the full amount claimed.

Although Dongbu's claims cannot be deemed frivolous, they should be reduced to account for estimated savings. In defense of its assertion that it is entitled to security for the full amount of its indemnity claim and redelivery bonus, Dongbu contends that it is "virtually impossible" to calculate its savings as a result of the premature termination of the contract. Dongbu asserts that "expert evidence will have to be presented to the London arbitrators in order for any alleged 'savings' to be assessed." Hardison Aff. at ¶ 13. However, in determining appropriate security, only a reasonable estimate of savings—not an accurate calculation—is needed. Therefore, security should be reduced to account for the estimated amount of savings.

■ Dongbu's subcharter to NSAC would have employed MASS WITS from approximately May 3 to July 1, 1996. Hedger Reply Aff. at ¶ 17. Dongbu alleges that as a result of the premature termination of the charter, it was unable to fulfill its obligations under the subcharter agreement and has brought an indemnity claim of $121,375 against Navios for its liability to the subcharterer. However, Dongbu has a duty to mitigate its damages and its claim must be offset by the savings it could have obtained by chartering another vessel for the term of the subchar-

ter. Using the market rate quoted by Dongbu's London attorney, *see* Affidavit of John Richard Blacker, London Attorney for Dongbu, dated July 4, 1996, at ¶ 13, Dongbu's estimated savings is $406,000.[4]

Dongbu's principal claims of $885,793 minus the estimated savings of $406,000, reduces Dongbu's damages to $479,793. Adding $88,762 (interest at 9.25% for two years) and $200,000 (costs) brings Dongbu's total MASS WITS claim to $768,555.[5]

## B. *The Korean Attachment*

■ Next, Navios contends that Dongbu's Korean attachment is duplicative of the New York action and that Dongbu is oversecured for its MASS WITS claim. Marion Letter at 2. In response, Dongbu argues that it is not oversecured if Dongbu's security needs for all three time charter disputes are aggregated. *See* Plaintiff's Memorandum at 9. Dongbu cites no authority to support its theory of aggregating claims nor has the Court been able to locate any authority for this broad view of the scope of attachment. The proceeding before this Court is for security for the MASS WITS dispute only. If Dongbu wished to obtain security for the other two disputes, it should have sought that in its complaint.

Because the Korean attachment was obtained as security for Dongbu's claims in all three time charter disputes, I must now determine the portion allocable to the MASS WITS dispute. The Korean attachment of $854,300 is based on Dongbu's total claim of $881,485. On the application for security, Dongbu claims $161,280 for LUCKY BULKER, $639,840 for MASS WITS, and $80,366 for SCENERY SEA. *See* Letter from Kim, Shin & Yu, annexed as Ex. A to Hedger Reply Aff. The MASS WITS claim represents seventy-three percent of $881,485. Therefore, seventy-three percent of the actu-

---

4. The savings is calculated as follows: $15,500 (contract rate) − $8,500 (market rate) = $7,000 savings/day $7,000 × 58 days (approx. length of subcharter) = $406,000 (total savings).

5. Navios argues that Dongbu's estimate for interest and costs is exaggerated because it includes time for an appeal. *See* Second Affidavit of

Charles G. Weller, London Attorney for Navios, dated August 2, 1996, at ¶¶ 5–17. Because the possibility of an appeal is a reasonable factor to consider when estimating interest and costs and since Dongbu's attachment has already been substantially reduced, Dongbu's estimate of the interest rate and costs will not be reduced.

al attachment is properly allocated to MASS WITS. That is, seventy-three percent of $854,300, or $623,639, is properly allocated to MASS WITS.

After reducing Dongbu's damage estimate to reflect savings from not having to pay the time charter's unfavorable rate, Dongbu's MASS WITS claim is $768,555. Since Dongbu has already attached $623,639 in Korea, the New York attachment should not exceed $144,916. Therefore, the New York attachment of $824,908 must be reduced by $679,-992.

## II. *Motion for Security on Counterclaims*

Navios requests countersecurity for losses it incurred as a result of the premature termination of the MASS WITS charter.[6] Rule E(7) of the *Supplemental Rules for Certain Admiralty and Maritime Claims* provides in relevant part:

> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct.

Navios has satisfied the requirements of Rule E(7): (1) Navios' counterclaim arises out of the same transaction; and (2) Navios has given security to respond in damages. ■ Despite the fact that the requirements of Rule E(7) are satisfied, the trial court possesses broad discretion in deciding whether to order countersecurity. *See Result Shipping v. Ferruzzi Trading*, 56 F.3d 394, 399 (2d Cir.1995); *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 349 (11th Cir.1990); *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987). The Second Circuit has held that the

following countervailing principles should guide the court in exercising its discretion: (1) "[placing] the parties on an equality as regards security," *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir.1987) (quoting *Washington–Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 638–39, 44 S.Ct. 220, 223, 68 L.Ed. 480 (1924)); and (2) avoiding the imposition of burdensome costs on a plaintiff that might prevent it from bringing suit. *Result Shipping v. Ferruzzi Trading*, 56 F.3d 394, 399 (2d Cir.1995).

■ The application of these principles suggests that countersecurity should be granted. Dongbu is already fully secured for its MASS WITS claims and Navios is entitled to be placed on an equal footing. Furthermore, Dongbu has not asserted that granting such security would be so burdensome as to prevent Dongbu from bringing suit. However, it is not necessary to grant the full amount of security requested by Navios, since Navios has already obtained a portion of security in Connecticut.

Dongbu asserts that Navios is not entitled to any security in this proceeding because Navios has already obtained security for its MASS WITS claims in Connecticut. *See* Plaintiff's Memorandum at 11. The following accounts were attached in Connecticut as security for Navios' MASS WITS and LUCKY BULKER claims:

| | |
|---|---|
| $161,280 | Navios' A/P for the LUCKY BULKER charter |
| $281,403 | Navios' A/P for the MASS WITS charter |
| $ 82,000 | Navios Int'l's A/P for the SCENERY SEA charter |
| $524,683 | TOTAL Accounts Payable |

*See* Hedger Reply Aff. at ¶¶ 9–10.

Although Navios did obtain some security for its MASS WITS claim, Dongbu erroneously allocates the amount in the "MASS WITS" account to the amount of security obtained for MASS WITS. *See* Plaintiff's Memorandum at 14. Navios' allocation of the entire security to the LUCKY BULKER

---

**6.** Navios claims the following damages in the London arbitration of the MASS WITS dispute:

| | |
|---|---|
| Losses resulting from premature charter termination | $243,650 |
| Interest at 7% | $ 9,892 |
| Costs | $100,000 |
| TOTAL CLAIMS | $353,542 |

Defendant's Reply Memorandum, dated July 12, 1996, at 5.

claim is also incorrect. Navios may not apply the entire sum to whichever claim it chooses merely because it was unable to obtain sufficient security to cover both its LUCKY BULKER and MASS WITS claims. All three accounts were secured to support Navios' LUCKY BULKER and MASS WITS claims as alleged in its Connecticut complaint and must be allocated according to the proportion of alleged damages.

The Connecticut attachment of $424,683 is based on Navios' LUCKY BULKER and MASS WITS claims totaling $665,000. Of the $665,000, $140,000, or twenty-one percent, represents the MASS WITS claims. Therefore, of the $524,683 actually attached, 21%, or $110,183, is properly allocable to MASS WITS. In the present action, Navios' MASS WITS claim is $353,542. Since Navios is already secured for $110,183, Navios is only entitled to countersecurity in the amount of $243,349.

### CONCLUSION

For the reasons stated above, Navios' motion for partial release of the maritime attachment and garnishment of its bank account is granted to the extent that the attachment exceeds $144,916. Navios' motion for countersecurity is granted in the amount of $243,349.

SO ORDERED.