*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-PR-1733

IN RE ESTATE OF CLARATEEN G. NELSON;
JAMES M. TAYLOR, JR., APPELLANT.

Appeal from the Superior Court of the
District of Columbia
(ADM-1201-11)

(Hon. John M. Campbell, Trial Judge)

(Argued November 5, 2013                          Decided February 27, 2014)

(Amended March 13, 2014)[1]

*Andrea J. Sloan* for appellant.

*Michael P. Bentzen*, with whom *Elizabeth Hughes* was on the brief, for appellees.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and KING, *Senior Judge*.

KING, *Senior Judge*: James Taylor, Jr., appellant, challenges his removal as

---

[1] After initial publication of this opinion, the Superior Court requested that we amend the opinion to indicate that the case is remanded to the Superior Court for a hearing with Judge Campbell presiding. We have amended the opinion by modifying the Introduction, Part II.A., and Part III. to state that the case is not remanded to Probate Division, but to the Superior Court and Judge Campbell specifically.

co-personal representative of his mother's estate and the denial of his emergency petition for appointment of a successor personal representative. Appointed alongside his sister, appellee Jo Ann Smoak, James Taylor was removed during a hearing convened to consider Smoak's motion to strike Andrea Sloan as his counsel. After finding that there was no basis upon which to strike Sloan's appearance and to disqualify her, the trial court ordered James Taylor's removal as co-personal representative, leaving Smoak as the sole personal representative of the estate. We remand the case,[2] with instructions for the Superior Court, Judge Campbell specifically, to conduct a hearing in accord with D.C. Code § 20-526 (b) (2012 Repl.) and to state the grounds for James Taylor's removal, if he finds an adequate basis to do so. We dismiss for lack of standing the portion of James Taylor's appeal dealing with his petition for appointment of a successor personal representative.

---

[2] A "case" remand . . . returns the case to the trial court for all purposes. This court retains no jurisdiction over the case and the appeal is terminated. If, after a case remand, a party is dissatisfied with the action of the trial court, the only course available to obtain review in this court is to file a new notice of appeal, once a final order or judgment is entered.

*Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996).

**I.**

After Clarateen Nelson's death on October 9, 2011, two of her children—James Taylor, Jr. and Jo Ann Smoak—were appointed on December 15, 2011, as co-personal representatives (CPRs) of her estate pursuant to a provision in decedent's will. James Taylor was represented by Andrea Sloan, who had been appointed previously as Nelson's conservator and guardian. Following a period of friction between the CPRs and a delay in administering the estate, James Taylor and his brother, Carl Taylor, filed a joint emergency petition to remove Smoak as CPR on February 24, 2012. In so doing, James Taylor offered to resign as CPR on the condition that Smoak be removed and that a disinterested member of the bar be appointed in their place. Smoak filed an opposition on March 5, 2012, denying James Taylor's allegations that she had breached her fiduciary duties, and asking the trial court to accept his resignation, thereby allowing Smoak to administer the estate as the sole personal representative.

On March 5, 2012, Judge Campbell ordered a hearing on the petition for removal pursuant to D.C. Code § 20-526 (b). At that hearing on April 5, Judge Campbell acknowledged that Sloan's representation of James Taylor was causing

issues in the estate's administration, noting that he was surprised that James Taylor hired Sloan as his attorney and, because of Sloan's previous involvement as conservator, "Mr. Taylor's decision to retain [Sloan] as counsel . . . seems like a poison pill" because of a "practical" conflict of interest. Sloan agreed to resign as his counsel and the hearing then ended. On April 13, however, James Taylor filed a Joint[3] Motion for Judgment on the Pleadings or, in the alternative, a Joint Motion for Summary Judgment on the petition to remove Smoak as CPR, which was signed by Sloan as his counsel. In the motion, James Taylor stated, "the Court cannot order [Sloan's resignation] without [James Taylor's] consent" and "he wished to continue to retain the services of . . . Sloan . . . as his counsel in th[e] matter."

Smoak opposed the Joint Motion and also filed a Motion to Strike Sloan's appearance and disqualify her as James Taylor's counsel on April 30, 2012, noting that she "has an actual, unwaivable conflict of interest resulting from her position as the Conservator for Clarateen Nelson." At the next hearing, Judge Campbell indicated his surprise that Sloan was present as James Taylor's attorney. Asserting

---

[3] The motion stated, "[b]y express consent of counsel . . . , Carl Jeffrey Taylor joins in support of this Motion."

her client's right to select counsel, Sloan continued with the representation. Judge Campbell theorized that James Taylor was attempting to "force [his] hand" by "compelling [him] to grant [James Taylor's] motion to remove [Smoak] and to remove [James Taylor]" in the process. Judge Campbell then denied the motion to remove Smoak, noting that there was no sufficient reason to remove her.

The next hearing, meant to focus on Smoak's Motion to Strike Sloan's appearance as James Taylor's counsel, occurred on September 5, 2012. Judge Campbell stated that he could not "find grounds at this point to remove Ms. Sloan under [the Rules of Professional Conduct]." Judge Campbell then turned his attention to James Taylor, stating that the problems with administration of the estate—

> seem[ed] to be an effort by Mr. James Taylor to torpedo this co-personal representative relationship; to make it fail.
>
> In fact, he has as much as acknowledged that by saying let me resign. Let me resign. But, get rid of [Smoak], too, and then in later pleadings from Ms. Sloan, saying that, you know, what you really ought to do is to get rid of both of them and appoint a Member of the Bar.
>
> I believe that the litigation here and the glacial pace as Ms. Sloan describes the progress of the matter is largely Mr. Taylor's responsibility because he has

persisted in this issue with Counsel or where Counsel has the not removable conflicts but issues that should give everyone pause.

I believe that for that, we will go back to an earlier solution suggested by Ms. Smoak and remove Mr. Taylor as co-personal representative in this case.

Ms. Smoak will continue as the sole personal representative of the estate.

Judge Campbell went on to state, "the grounds [for James Taylor's removal] are very clear," but did not expand further. A brief order, removing James Taylor, was filed on September 13, 2012.

James and Carl Taylor then filed an emergency petition for the appointment of a successor personal representative on September 21, 2012, citing the language in Item VIII[4] of Nelson's will as a basis for removing Smoak as personal representative and appointing Carl Taylor as successor. The court denied the

---

[4] Item VIII of the will provides:

In the event that the above-named Co-Personal Representatives shall, for any reason, fail to qualify, or having qualified, fail to complete the administration of my estate, I nominate and appoint my son, CARL J. TAYLOR instead and give said Personal Representative all rights, powers, and immunities set forth in this Will, including the requirement that said Personal Representative serve without bond.

petition on October 1, stating that the will's language was clear and that a successor personal representative, Carl Taylor, would be appointed only if Smoak could not complete her duties as the remaining CPR.

On the basis of the September 13, 2012, order removing James Taylor and the October 1, 2012, order denying the emergency petition, James Taylor filed a notice of appeal on October 12, 2012.[5]

## II.

James Taylor argues that his removal as CPR violated D.C. Code § 20-526 because Smoak never filed a motion to remove him as CPR, he had no notice that he could be removed, and none of the bases for removal in Section 20-526 were articulated by the trial court. He also argues that Smoak's appointment as the sole personal representative is contrary to Item VIII of Nelson's will. In response, Smoak argues that James Taylor's removal was not a final order, pursuant to Super. Ct. Prob. R. 8, and therefore this court does not have jurisdiction to consider

---

[5] As noted in our March 13, 2013, order denying his request to join the appeal, Carl Taylor did not file a timely notice of appeal. Therefore, James Taylor is the only appellant before us.

this appeal, that he waived his right to serve as CPR when he offered to resign,[6] and that his removal met procedural requirements under Section 20-526. Smoak also claims that James Taylor does not have standing to contest the decision not to appoint Carl Taylor as successor personal representative and, even if he did, Judge Campbell properly interpreted Item VIII of Nelson's will.

## A. James Taylor's Removal

D.C. Code § 20-526, governing the removal of a personal representative, states:

> (a) Cause for removal. -- A personal representative shall be removed from office upon a finding by the Court that such representative:
>
> (1) misrepresented material facts in

---

[6] We reject Smoak's contention that James Taylor resigned from his position. He conditioned his resignation on Smoak's removal as co-personal representative; however, that condition did not occur. Further, his willingness to resign in a petition to remove Smoak did not satisfy the statutory requirements for resignation. *See* D.C. Code § 20-525 (2012 Repl.) ("A personal representative may resign by filing a written statement of resignation with the Register after giving at least 15 days written notice to all interested persons of intention to resign. . . . The resignation of a personal representative shall be effective upon approval by the Court.").

the proceedings leading to the appointment;

> (2) willfully disregarded an order of the Court;

> (3) is unable, for any reason, to discharge the duties and powers effectively;

> (4) has mismanaged property; or

> (5) has failed, without reasonable excuse, to perform any material duty of such office; provided, that the Court may continue the personal representative in office following a finding in accordance with paragraph (5) if the Court finds that such continuance would be in the best interests of the estate and would not adversely affect the rights of interested persons or creditors.

> (b) Hearing. -- The Court shall conduct a hearing prior to the removal of a personal representative. Such hearing may be held on the Court's own motion, on motion of the Register, or on the written petition of any interested person. The Register shall give notice of such hearing to all interested persons and the Court shall conduct the hearing within a reasonable time thereafter. Upon receipt of such notice, the personal representative may exercise only the powers of a special administrator, as provided in by section 20-533.

Preliminarily, we disagree with Smoak's argument, citing Super. Ct. Prob.

R. 8[7] and its Comment,[8] that the removal of a personal representative is not a final

---

[7]     (a) Generally.  Any person who is aggrieved by a final order or judgment of the Probate Division of the Superior Court of the District of Columbia and who participated in the determination of that order or judgment may file an appeal therefrom to the District of Columbia Court of Appeals.

. . .

    (c) When Allowed—Decedents' Estates. . . . [A]ll orders and judgments of the court determining rights of any interested person or party in any proceeding in the administration of the estate of a decedent shall be deemed final with respect to matters provided for in subsections (1) through (6) of this section as follows:

> (1) Order granting or denying probate;
>
> (2) Order construing the decedent's will;
>
> (3) Order determining heirs or legatees;
>
> (4) Order determining title to assets;
>
> (5) Order determining that property should be sold;
>
> (6) Order approving a final account.

Super. Ct. Prob. R. 8.

[8]     [Super. Ct. Prob. R. 8] recognizes that, in the context of a decedent's estate, an order approving the final account is generally the only order that disposes of all the issues as to all the parties. Examples of probate orders that are not final absent an express determination by the Court include (but are not limited to) orders

(continued…)

order.  D.C. Code § 11-721 (a)(1) (2012 Repl.) provides that this court has jurisdiction over "all final orders and judgments of the Superior Court."  Section 11-721 is modeled after 28 U.S.C. § 1291, which states that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."  We rely on our statute, which trumps Probate Rule 8, because "absent express statutory authorization, 'no rule of court can enlarge or restrict jurisdiction.'"  *Ford v. ChartOne, Inc.*, 834 A.2d 875, 879 (D.C. 2003) (quoting *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 635 (1924)).

Applying the language of the jurisdiction statute, we hold that the order removing James Taylor was final and therefore appealable.  *Collins v. Miller*, 91 U.S. App. D.C. 143, 144-46, 198 F.2d 948, 950-51 (1953) ("The order [removing the administrator of a will] was not a mere step toward final judgment in which it would merge.  On final distribution of the estate it will be too late effectively to review the order, and the rights conferred by the Code to prompt and proper

---

(…continued)
   appointing or removing fiduciaries . . . .

Super. Ct. Prob. R. 8 cmt.

administration of the estate will be lost, probably irreparably. We think that like the order in . . . [*Cohen v. Beneficial Indus. Loan Corp.*] . . . , the order in the instant case is appealable because it was a final disposition of the claimed right, not an ingredient of the administration of the estate itself and not requiring consideration with it.");[9] *cf. Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) ("But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be *too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. . . .* This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." (emphasis added)).

With respect to the merits of the claims asserted, we begin by assuming,

---

[9] *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("With respect to decisions of the United States Court of Appeals [for the District of Columbia Circuit] rendered prior to February 1, 1971, we recognize that they, like the decisions of this court, constitute the case law of the District of Columbia.").

without deciding, that James Taylor had notice of his removal proceedings and a hearing was properly held,[10] we turn to the grounds for his removal.

> Because the court has no discretion, but is statutorily bound to remove the personal representative *if it finds that []he committed one of the enumerated infractions*, we review only the determination of whether an infraction has been committed. *In re Estate of Delaney*, 819 A.2d 968, 1002 (D.C. 2003). We review the trial court's conclusions of law *de novo*, and we may set aside any decisions insofar as they rest on an erroneous view of the law. D.C. Code § 17-305 (a) (2001); *Moshovitis v. The Bank Companies*, 694 A.2d 64, 67 (D.C. 1997). We may not set aside a judgment of a trial court in a matter tried without a jury except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it. *See In re Estate of Delaney, supra*, 819 A.2d at 1002.

*In re Estate of Bates*, 948 A.2d 518, 524 (D.C. 2008) (emphasis added). The language of Section 20-526 (a) is clear that "[a] personal representative shall be removed from office *upon a finding* by the Court that such representative" committed one of the acts enumerated. Neither the hearing transcript nor the order removing James Taylor expressly states the grounds for his removal. In the absence of such findings, we cannot properly review the Superior Court's decision.

---

[10] Although there may have been no notice and no proper hearing, our decision to remand effectively provides James Taylor with notice of a future hearing on this issue.

However, Smoak argues that Judge Campbell "essentially" found James Taylor to have violated Section 20-526 (a)(2) (willfully disregarding a court order), (a)(3) ("unable . . . to discharge the duties and powers effectively"), and (a)(5) (failing to perform any material duty without a reasonable excuse). We cannot agree that the Superior Court implicitly made those findings. Judge Campbell did state that he believed James Taylor was "torpedo[ing]" the co-personal representative relationship and administration's progress was moving at a "glacial pace." Neither of these statements, however, clearly indicates that Judge Campbell believed James Taylor willfully disregarded an order, was not discharging his duties effectively, or failed to perform any specific duties as a co-personal representative. In absence of reviewable findings in Judge Campbell's September 13, 2012, order, remand is necessary for the trial judge to conduct a hearing on this issue and state the grounds for James Taylor's removal, if such grounds are found to exist.

## B. Denial of the Motion to Appoint Carl Taylor

James Taylor also claims that the trial court erred in not appointing Carl Taylor to replace him as successor personal representative. We do not reach the

issue because a personal representative who has been removed by the probate court has no standing to contest the appointment of a successor. *In re Estate of Delaney*, *supra*, 819 A.2d at 1003 (holding that a removed personal representative who was also a legatee under the will was not an "aggrieved" party in the meaning of D.C. Code § 11-721 (b) (2001) and the appointment of a successor personal representative causes no injury to the former representative's "legal rights or to some legally protected relationship"). James Taylor has not described how he was aggrieved by this decision, nor has he cited any authority in support of his argument that, as a legatee, he has standing whenever the trial court construes the will. James Taylor's appeal of the October 1, 2012, order is therefore dismissed. *See id.* ("An appeal may be dismissed if the appellant lacks standing as an aggrieved party. (citing *In re C.T.*, 724 A.2d 590, 595 (D.C. 1999))).

## III.

For the foregoing reasons, Judge Campbell's September 13, 2012, order removing James Taylor is reversed and the case is remanded. Judge Campbell is instructed to hold a hearing on his removal as co-personal representative and state the basis for any such removal in accordance with Section 20-526. James Taylor's

appeal of the October 1, 2012, order is dismissed.

*So ordered.*